(83 South. 122)

PARISIAN CO., Inc., et al. v. WILLIAMS.
(6 Div. 842.)

(Supreme Court of Alabama. April 24, 1919. Rehearing Denied Oct. 23, 1919.)

1. MALICIOUS PROSECUTION ⬡➾56 — BURDEN OF PROOF.

Plaintiff, in an action of malicious prosecution, has the burden of showing by preponderance of evidence: First, that defendant has prosecuted him, or caused him to be prosecuted, and that the prosecution is ended; and, second, that the prosecution on the part of defendant was both malicious and without probable cause, in consequence of which plaintiff was damaged.

2. MALICIOUS PROSECUTION ⬡➾20, 27—"MALICE;" "PROBABLE CAUSE."

In a malicious prosecution case, "malice" is deemed the willful and intentional institution of prosecution, whether the motive be to injure the defendant, or to gain some advantage to the prosecutor, or through mere wantonness or carelessness, while "probable cause" is a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that defendant is guilty of the offense charged.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Malice; Probable Cause.]

3. MALICIOUS PROSECUTION ⬡➾32—MALICE; INFERENCE FROM WANT OF PROBABLE CAUSE.

Malice may be inferred in an action for malicious prosecution from want of probable cause, as well as from the circumstances surrounding the prosecution, and the conduct and declarations of the prosecutor.

4. MALICIOUS PROSECUTION ⬡➾71(2)—PROBABLE CAUSE; QUESTION FOR JURY.

In an action against defendants for maliciously instituting a prosecution against plaintiff for violation of an ordinance relating to false advertisements, a literal copy of Printers Ink Statute Sept. 1, 1915, held that, as the advertisement set out verbatim a telegram from plaintiff's wife, who was purchasing the goods, denial of an affirmative charge for defendants was not error, the question whether there was probable cause for the prosecution was under the evidence, for the jury.

5. MALICIOUS PROSECUTION ⬡➾19, 71(2)— PROBABLE CAUSE; GOOD FAITH OF ACCUSED QUESTION FOR JURY.

In a civil action for maliciously instituting a prosecution against plaintiff for violation of a city ordinance prohibiting false advertisements, held that, as the question is whether the prosecutor acting in good faith and on the reasonable appearance of things entertained the reasonable belief of the guilt of accused, and not whether accused was in fact guilty, the question whether defendants acted reasonably was under the evidence for the jury.

6. MALICIOUS PROSECUTION ⬡➾59(5), 60(3)— ABANDONMENT OF PROSECUTION AS EVIDENCE ON QUESTION OF PROBABLE CAUSE AND MALICE.

Where plaintiff claimed that defendants maliciously instituted against him a prosecution under a city ordinance for false advertising, it being shown that one of the defendants was the originator of the entire matter and furnished the means by which evidence was obtained, though prosecution was actually instituted in the name of an ad club, evidence that the club abandoned the prosecution before trial, and ordered the attorney to drop the case, was admissible on questions of probable cause and malice.

7. MALICIOUS PROSECUTION ⬡➾60(3) — EVIDENCE OF MALICE.

In a civil action for damages for instituting a prosecution against plaintiff for alleged false advertising, where it appeared that plaintiff was a dangerous competitor of defendants, held that evidence that one of the defendants, who was the manager of the corporate defendant, was actually the real prosecutor, that he induced an advertising club to make the charges, and

⬡➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

had the prosecution continued after the club abandoned the same, is admissible on the question of actual malice.

**8. MALICIOUS PROSECUTION ☞59(7)—PROBABLE CAUSE; EVIDENCE.**

In a civil action for maliciously instituting a prosecution against plaintiff for false advertising, *held* that testimony by a witness as to the value of garments advertised, which were exhibited to him in the recorder's court in which the criminal prosecution was heard, was competent on the question of probable cause.

**9. MALICIOUS PROSECUTION ☞62—EVIDENCE; EXTENT OF INJURY.**

In a civil action for maliciously instituting a prosecution against plaintiff for false advertising, it was permissible to allow plaintiff to testify as to the amount he had paid counsel in defending the prosecution, even though the defendant would not be liable for more than the reasonable value of the attorney's fees.

**10. TRIAL ☞105(2)—EFFECT OF EVIDENCE ADMITTED WITHOUT OBJECTION.**

In action for malicious institution of a criminal prosecution against plaintiff, where plaintiff was properly allowed, over the general objections made, to testify to the fee paid to attorneys defending the criminal prosecution, the refusal of a charge instructing the jury that they were not authorized to assess damages for the attorney's fee which they found plaintiff had paid, or incurred, *held* proper, as the evidence could not be eliminated by the charge; no valid objection having been interposed.

**11. TRIAL ☞240—ARGUMENTATIVE INSTRUCTIONS.**

In action for damages for malicious institution of a criminal prosecution against plaintiff, who was charged with falsely advertising merchandise, where it was plaintiff's claim that defendant induced an ad club to begin prosecution, and after the club abandoned the same, had it continued, a requested instruction that the jury could not find for plaintiff on the theory that after the club abandoned the prosecution defendant continued the same was properly refused, being argumentative.

**12. TRIAL ☞253(8)—INSTRUCTIONS OMITTING ISSUES.**

In an action for damages for maliciously instituting a criminal prosecution against plaintiff for false advertising, where plaintiff claimed that the advertisement specified that waists were of values up to $7.50, and that some of them were worth that sum or more, *held* that a special charge that if any of the waists on sale by plaintiff were worth less than $7.50 verdict should go for defendants, objectionable as omitting reference to facts known to defendant at time of prosecution, and of his reasonable belief as to plaintiff's guilt, was properly refused.

**13. MALICIOUS PROSECUTION ☞72(2) — INSTRUCTIONS AS TO PROBABLE CAUSE.**

A requested charge that the fact that the prosecution against plaintiff was nol. pros'd is not sufficient to show that the prosecution was begun without probable cause *held* properly refused as misleading, in an action for damages for maliciously instituting against plaintiff a prosecution for violation of a municipal ordinance by false advertising.

**14. MALICIOUS PROSECUTION ☞68—EXEMPLARY DAMAGES.**

Where it appeared that defendants instituted a criminal prosecution against plaintiff, not only without probable cause but with intent to injure plaintiff, exemplary damages are recoverable.

**15. MALICIOUS PROSECUTION ☞69—EXCESSIVE DAMAGES.**

In a civil action for maliciously instituting a criminal prosecution against plaintiff, wherein it was charged that he violated a municipal ordinance by false advertising, a judgment for $3,000 in favor of plaintiff, a retailer building up a new business, *held*, under the circumstances, not excessive.

**16. NEW TRIAL ☞66—VERDICT CONTRARY TO INSTRUCTIONS; FAVORABLE ERROR.**

A new trial should not be granted on ground that verdict which was justified by the evidence was contrary to an instruction which was more favorable to defendants than they were entitled to.

Appeal from Circuit Court, Jefferson County; John H. Miller, Judge.

Action by S. A. Williams against the Parisian Company, Incorporated, and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Suit for malicious prosecution by S. A. Williams, appellee, against appellant, the Parisian Company, and its manager, Laurens Block, resulting in a verdict and judgment for the plaintiff in the sum of $3,000, from which judgment the defendants prosecute this appeal.

The evidence for the plaintiff tended to show as follows: That he was manager and largely interested in the firm of S. A. Williams & Co., a mercantile establishment in the city of Birmingham, engaged chiefly in selling ladies' ready-to-wear clothing; and that the defendant the Parisian Company, of which the defendant Laurens Block was manager and had full charge and control, was engaged in the same business. The two stores were in the "same block on Third avenue, about Nineteenth street, between Nineteenth and Twentieth streets, on the south side of the avenue," and adjoined. At the time this cause of action arose, the Williams Company had been in business for about two months, and prior to this occurrence the plaintiff had been approached by defendant Block with a view of buying him out, but the plaintiff finally refused to sell. Prior to this occurrence plaintiff had also been approached by defendant Block's kinsman, who was also his attorney, with a complaint as to the arrangement of the front of the S. A. Williams & Co. store, which

Block claimed was an imitation of the front of the Parisian Company's store, thereby deceiving the public and inducing people to enter the same under the impression it was the Parisian, as the Parisian ' occupied the upper floors of the building in which the Williams Company was located. However, upon investigation of the authorities, no action was brought by the attorney in the court.

Plaintiff's wife assisted in the business, and on November 3, 1916, was in New York, buying goods for the appellee. That plaintiff had very broad acquaintance with eastern manufacturers on account of his former experience as a buyer for eastern firms, and his thorough knowledge of the trade, is shown by the evidence. It is further shown that Mrs. Williams had succeeded in buying a large stock of ladies' waists, coats, suits, and evening gowns in a job lot at a very low wholesale price, and as a part of an advertising campaign she sent a telegram from New York to Birmingham, stating what she had bought, and advising that a special sale be made on them; and that the eastern manufacturers were extending every courtesy to make the business a success; that plaintiff gave the telegram to the newspaper advertising agent, who was also connected with the Birmingham Ledger, and who wrote the advertisements himself after having been given the items by the plaintiff; that the plaintiff delivered the telegram received from Mrs. Williams to the advertising agent with instructions to follow out those items and advertise them as the telegram called for. The telegram was offered in evidence. The advertisements were written up by the agent, one in the Birmingham News and the other ·in the Birmingham Ledger. By mistake, either of the printer or the advertising man, the prefix "Mrs." was omitted from the signature of the telegram printed in the Ledger, but the telegram was signed by Mrs. S. A. Williams. The advertisement set out this telegram, and appeared on that day in both the News and the Ledger. The two advertisements were identical, with the exception 'that in the Ledger advertisement, in setting out the signature to the telegram, the prefix "Mrs." was omitted. The advertisement is as follows:

The House of Truth.

Alterations Free.                    Fit Guaranteed.

S. A. Williams & Co., Inc., 1911
Third Avenue.

Now comes the most wonderful sale women's and misses' correct apparel fresh from New York Birmingham has ever known.

New York manufacturers flood the House of Truth—Birmingham's new ready-to-wear store, with values that positively cannot be duplicated in Birmingham outside this store.

Again the House of Truth demonstrates in the most forceful way the absolute supremacy of its buying power. Again the big manufacturers of the East prove their heart and soul interest in the success of this new store. This purchase, which covers suits, dresses, coats, waists, etc., is purely a compliment to Mr. S. A. Williams, who, for many years has been one of the largest buyers of ladies' and misses' apparel in the East. The telegram tells you the story. Most of these are but one and two of a kind. Exclusive models and the very cream of New York's fashions.

Ready Saturday morning—extra salespeople to serve you promptly. Note.—Despite the sensationally low prices, all alterations will be made absolutely free of charge and fit is guaranteed.

"Western Union Telegram.

"Newcomb Carlton, Pres. Geo. W. E. Atkins, Vice-Pres. Belvidere Brooks, Vice-Pres. Received at Birmingham, Ala., Nov. 3, 1916. S. A. Williams & Co., Inc., 1911 3rd Ave., Birmingham, Ala. Manufacturers are combining in helping us make a big success. Bought job lot plush coats. Values to twenty-seven fifty—sell at fourteen ninety-five, also lot novelty coats, values to twenty-two-fifty—sell at nine ninety-five. Special lot plush coats value fifty dollars, sell at twenty-nine ninety-five. Georgette and crepe de chine waists, values to seven fifty, sell at two ninety-five. Afternoon and evening gowns, values to fifty dollars, sell at nineteen ninety-five. Two hundred suits, all sizes, values to thirty-five, sell at fourteen ninety-five. Beautiful serge dresses values to twenty, sell at nine ninety-five. These are the most wonderful values ever offered in Birmingham. Advertise them strong for Saturday's selling. Birmingham women will be certain to appreciate this timely sale.
                              "Mrs. S. A. Williams."

Plush Coats. [Here picture appears.] $27.50 values, $14.95.

Handsome new plush coats. A value you cannot afford to miss. $50.00 values, $29.95.

You who have waited for that rich plush coat need wait no longer.

$20 New Serge Dresses, $9.95.

Lovely dresses less than half value.

$7.50 Georgette and Crepe De Chine, $2.95. [Here picture appears.]

Twenty styles to pick from. Never a waist value like this in Birmingham before.

Beautiful Afternoon and Evening Gowns, $19.-95, values to $50. [Here picture appears.]

The most charming creations in evening and afternoon frocks you have ever beheld. All colors and black. Samples, only one of each.

200 Suits [Here picture appears.] All sizes $35.00 values, $14.95.

The smartest suits that have been South this season. Mostly one and two of a kind. All colors. Handsomely tailored, fur and velvet trimmings, novelty buttons, etc. $35.00 values.

The House of Truth
New Store, New Goods.
S. A. Williams & Co., Inc.
1911 Third Avenue.

Mail orders promptly filled when cash accompanies order.

That upon appearance of these advertisements in the paper, the defendant Block called one Cullen, who was acting secretary of

what was known as the Ad Club, an organization of some of the retail firms of Birmingham, organized to protect themselves against excessive advertising rates, and also to protect the public against false and fraudulent advertisements. Defendant Block also called up an attorney, who was at that time counsel for the Ad Club, and, also, the advertising managers of other firms in Birmingham, all of which resulted in a conference at defendant Block's private office, which was his office as manager of the Parisian Company, at its place of business. All of those present at the conference were members of the Ad Club, except Block, and composed what is known as a protection committee. The president of the club was summoned and brought into the conference at this meeting. The defendant Block stated to the secretary that he wanted to call attention to an advertisement which he believed to be untrue, false, and misleading, and stated that the advertisement contained a "fake" telegram, to which the secretary replied he was ready to investigate it, and Block suggested that a warrant should be issued before an investigation was made in order to secure the evidence. The secretary desired that the evidence be secured before any warrant was sworn out; and it was suggested that two of the articles advertised—a plush coat and a georgette waist—be bought. It was finally agreed that the secretary's wife do the buying. It developed that there were no funds in the treasury of the club for this purpose, and thereupon the defendant Block offered to furnish the money, and gave the secretary $17.50, with which his wife was to make the two purchases above mentioned. The defendant Block also paid $25 to the fund out of which the fee of the club's attorney for the prosecution was to be paid. A few days subsequent defendant Block paid an additional $25 to this fund, either for himself or for some other party not disclosed. It is further shown that the secretary's wife was instructed to purchase one of the cheaper waists.

The purchases were made, and the secretary of the club stated that the coat bought was found to be the full value placed upon it in the advertisement; but the waist was variously estimated at different prices. The evidence for the defendant tended to show that it was not of the value of $7.50, as advertised. Defendant's evidence shows that, in the conference the advertisements in each of the papers were before them, and it was known that the plaintiff was not in New York.

Before the prosecution, the plaintiff was not consulted to see whether or not the omission of the prefix "Mrs." to the telegram in the Ledger might have been a mistake. It is shown that it was the custom of the Ad Club to have a conference with the party accused before a prosecution was begun, but this course was not pursued in this case.

After these purchases were made, the secretary of the club was ordered by the president to have the plaintiff arrested; and that plaintiff was arrested by a city officer, as was also ordered by the attorney for the club. A complaint was filed based upon City Ordinance 214-C, containing five counts. The first charged that the telegram set out in the advertisement was not sent; the second, that said telegram was not sent on the day it purported to have been sent; third, that the georgette and crepe de chine waists purporting to be of $7.50 values, advertised for $2.95, were not of $7.50 value; fourth, that the plush coats advertised for $14.95 were not $27.50 values as stated in the advertisement; and, fifth, that the georgette and crepe de chine waists referred to in the advertisement were not $7.50 values, and the plush coats were not $27.50 values.

The plaintiff made bond, and trial was had in the recorder's court of the city of Birmingham, resulting in a conviction and fine of $10 upon the count as to the waist; and as to the other charges he was found not guilty. Upon appeal the prosecutor not appearing, the case in which he had been found guilty by the recorder was dismissed.

On the trial in the recorder's court the waist and coat purchased were in evidence, and it seems some other waists also.

Witness Kaufman, for the plaintiff, testified as to examining these waists, which were shown him at the trial in the recorder's court; that he had been in that line of business for about 20 years, and that the retail price for the waist shown him would be from $7.50 to $10 in Birmingham. The evidence of Miss Davis, witness for the plaintiff, tended to show that all the waists on the counter and offered for sale at this time were worth $7.50, as advertised; she having had experience in that line of business, and at that time was in the employ of S. A. Williams & Co.

Plaintiff, himself, however, testified that this particular waist, purchased as above stated, was not, in his opinion, worth $7.50, and that he had never claimed that it was worth $7.50, but that the same waist would sell in Birmingham in most stores for $3.95. His evidence tended to show that a large number of the other waists were of the full value of $7.50 and more; that the telegram set out in the advertisement as to these waists stated the "values to $7.50," and likewise as to the other articles. It is further shown that he (plaintiff) had been engaged in the business for a number of years, and by broad acquaintance was enabled to purchase in job lots such merchandise at a very low figure and make a considerable profit.

Plaintiff's evidence shows that, following the arrest, and before the trial, the attorney

for the Ad Club had been instructed by the club to drop the case, and that the said Ad Club ceased to have anything further to do with the prosecution. This testimony was objected to by the defendant,. and the objection overruled. Notwithstanding this instruction, the attorney proceeded to prosecute the case, and succeeded in having the plaintiff convicted in the recorder's court. The attorney for the Ad Club in the prosecution of this ·case had been the attorney who had handled the legal matters of the club regularly. He had been instrumental in having the advertising law enacted in the state on behalf of the club.

The secretary of the club testified that he went down to the city hall to swear out the warrant, and that the attorney for the Ad Club went with him as far as one Black's store, and stopped on the Nineteenth street side of that store.

Plaintiff's evidence further tended to show that his prosecution was made a matter of considerable discussion in the city; that he lost time attending the trial of the cause; that he employed an attorney to defend him. Whereupon he was asked the following question, "How much did you pay him?" Objection was interposed on the ground that it was immaterial, irrelevant, and incompetent, which objection was overruled. Thereupon plaintiff answered, $300, which included his services in the recorder's court and in the circuit court on appeal. Plaintiff's evidence further shows that publicity was given to his arrest in the Birmingham News; that the statements made in the telegram sent from his wife were true as therein stated; that defendant Block was part owner of the Parisian Company, and was its manager, having full and complete charge of its business.

Defendant Block did not testify in the cause, but offered evidence tending to show that the waist and plush coat purchased by the secretary's wife were not of the value advertised; that the prosecution was carried on by the Birmingham Ad Club, and not by the defendant Block; that the arrest of the plaintiff was at the instruction of the president of the Ad Club; and that the attorney was employed by the Ad Club. Evidence was also offered tending to show that the attorney continued the prosecution after he was instructed by the Ad Club to drop the same on his own account and as a citizen.

There was considerable evidence offered as to the value of the different articles, and also that the waist purchased was a plain waist and not a beaded waist, as some of the evidence for the plaintiff tended to show, and that beaded waists were more expensive.

The testimony of the attorney for the Ad Club tended to show that he did not attend any conferences, and that he continued the prosecution on his own account, he was instructed by the Ad Club to drop the same.

The defendant requested the affirmative charge, which was refused. Defendant objected to the testimony of Kaufman, witness for the plaintiff, as to the value of certain waists exhibited to him on the trial of the cause in the recorder's court, which objection was overruled.

Among the defendant's refused charges were the following:

"(F) The court charges the jury that they are not authorized to find for the plaintiff in the case on the theory that, after the Birmingham Ad Club abandoned the prosecution, defendants or either of them continued the prosecution or authorized any one else to do so.

"The court charges the jury that if they find from the evidence that the plaintiff caused to be published in the Birmingham News, the advertisement upon which the prosecution was based, and that any of the waists so advertised were worth less than $7.50, they will find for the defendants.

"The court charges the jury that the fact that the prosecution against plaintiff was nol. pros'd, is not sufficient to show that the prosecution was begun without probable cause for believing that the plaintiff was guilty of the charge upon which he was being prosecuted."

Defendants made motion for a new trial upon the ground that the verdict was excessive and contrary to the evidence, and contrary to the law as charged to the court, which motion was overruled by the court.

Stokeley, Scrivner & Dominick, of Birmingham, and Steiner, Crum & Weil, of Montgomery, for appellants.

Harsh, Harsh & Harsh and W. J. Slaughter, all of Birmingham, for appellee.

GARDNER, J. [1] This is an action for malicious prosecution tried under the general issue; and the burden of proof is upon the plaintiff to establish by a preponderance of the evidence: "First, that the defendant has prosecuted complainant, or caused him to be prosecuted, as alleged in his complaint, and that the prosecution is ended; second, that the prosecution on the part of the defendant was both malicious and without probable cause; third, that in consequence of the prosecution complainant was damaged." Hanchey v. Brunson, 175 Ala. 236, 56 South. 971, Ann. Cas. 1914C, 804.

[2] The following excerpt from Gulsby v. L. & N. R. R. Co., 167 Ala. 122, 52 South. 392, is here pertinent:

"Malice has been thus well defined by this court: 'Whatever is done willfully and purposely, whether the motive be to injure the accused, to gain some advantage to the prosecutor, or through mere wantonness or carelessness, if at the same time wrong and unlawful within the knowledge of the actor, is in legal contemplation maliciously done.' Lunsford v. Dietrich, supra [93 Ala. 565, 9 South. 308, 30 Am. St. Rep. 79]; Jordan v. A. G. S. R. R. Co., 81 Ala.

220, 8 South. 191. Personal ill will, or desire for revenge, is not essential to the existence of malice as the law views it. Lunsford v. Dietrich, supra.

"Probable cause was also defined in Lunsford v. Dietrich, supra, as follows: 'A reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged.' Mere suspicion and belief, even though honestly, bona fide entertained, of the guilt does not, as readily appears, alone, rise to the dignity of affording a basis for probable cause. It is essential that, at the time the oath of affirmation is taken or made, the actor then knew of facts or circumstances such as would have justified a reasonable and cautious man in believing that the accused was guilty. Lunsford v. Dietrich, supra."

[3] Malice may be inferred from want of probable cause, for setting a prosecution on foot; and the question in such cases is not whether the accused was in fact guilty, but whether the prosecutor, acting in good faith and on the reasonable appearance of things, entertained the reasonable belief of his guilt. McLeod v. McLeod, 75 Ala. 483. "Malice may also be inferred * * * from the circumstances surrounding and attending upon the prosecution, the conduct and declarations of the prosecutor, his activity in and about the case, his efforts therein to secure some personal end." Lunsford v. Dietrich, 93 Ala. 565, 9 South. 308, 30 Am. St. Rep. 79.

[4] The prosecution of plaintiff was had upon a complaint containing five counts, charging in various ways—as disclosed in the statement of the case—a violation of an ordinance of the city of Birmingham, which counsel for appellant state in brief is a literal copy of what is known as the "Printers Ink Statute" (which statement we feel justified in accepting without further examination or question), approved September 1, 1915 (Acts 1915, p. 339). That portion of the act here pertinent provides for the punishment, by fine or imprisonment, or both, of "any person, firm, corporation or association, or agent or employé thereof with intent to sell or in any way dispose of merchandise * *| * offers * * * for sale * * * knowingly makes, publishes, * * * or causes, directly or indirectly, to be made, published, * * * in a newspaper, * * * or in any other way, an advertisement, announcement or statement of any sort regarding merchandise * * * so offered to the public which contains any assertion, representation or statement that is untrue, deceptive or misleading." Section 1.

A statute of like character was attacked upon constitutional as well as other grounds in the case of Jasnowski v. Connolly, 192 Mich. 139, 158 N. W. 229, and held to be free from such objection, and its validity is not here assailed. It is akin to those statutory provisions affecting the subject of fraud and false pretenses.

It is earnestly insisted by counsel for appellant that the court erred in refusing the affirmative charge for the defendants, upon the theory that the evidence shows without dispute there was probable cause for the prosecution; and that in such case there is presented a question of law for the court. Gulsby v. L. & N. R. R. Co., supra.

This insistence is largely based on some of the testimony of the plaintiff himself, who stated that all the articles offered were not of the full value as advertised, but that they were of varying values, "up to" the price indicated in the advertisement. The evidence for the plaintiff shows that he handed the telegram received from his wife, who was then purchasing goods for his company in New York City, to his advertising agent, with instructions to feature the advertisement in accordance with the telegram. The telegram was set out verbatim in the advertisement, and which, it may be inferred, formed the basis of the advertisement. It states "the telegram tells you the story." The telegram was to the effect that the values were to a certain price. There was ample evidence tending to show that among the different articles featured quite a number were of the full value as advertised, while others were not of such full value, but were well worth the price at which they were offered for sale.

The entire advertisement is to be considered as a whole, and we are of the opinion that, under the circumstances here disclosed, it was for the jury to determine whether or not the plaintiff knowingly published what was untrue, deceptive, or misleading.

[5] However, there is still another answer against the insistence for the affirmative charge. In cases of this character, the question to determine is whether the prosecutor acting in good faith and on the reasonable appearance of things entertained the reasonable belief of the guilt of the accused, and not whether the accused was in fact guilty.

The theory of the plaintiff is that, while the defendant Block did not swear out the warrant against him, yet he in fact caused his prosecution, instituted the original inquiry before the Ad Club, and was in fact the instigator of the entire proceeding. So the question remains, Were the facts and circumstances which were then known to the defendant sufficiently strong in themselves to warrant a cautious man in the belief that the plaintiff was guilty of the offense charged? The secretary of the Ad Club states that in the conference, which was held in the private office of the defendant Block, the two advertisements were exhibited and examined.

So far as all charges, with the exception

of the coat and waist purchased, as agreed in the conference, are concerned, there can be no serious controversy that the question of probable cause was for the jury's determination. As to the coat purchased by the secretary's wife, there was ample evidence for the jury's determination that it was of the full value advertised. In a statement by the secretary of the Ad Club is found this admission: "When the coat was bought it was found to be of the full value placed upon it in the advertisement." As to the waist purchased there is also evidence tending to show that it was of the value advertised, as is disclosed by the evidence set out in the statement of the case. Although the preponderance of the evidence may tend to show that it was not of the advertised value, yet it was of the full value at which it was offered for sale. The proof shows that various opinions were entertained as to the value of merchandise of this character; and therefore the question of probable cause upon this phase of the case was one for the determination of the jury.

[6, 7] The plaintiff was permitted, over the defendant's objection, to show that the Ad Club, after having instituted the prosecution, abandoned the same, and ordered the attorney to drop the case; and counsel insists that this constitutes reversible error—citing Hanchey v. Brunson, supra; Killebrew v. Carlisle, 97 Ala. 536, 12 South. 167.

Had the defendant Block been the actual prosecutor, there can be no question that the act of abandoning the same should be weighed by the jury in connection with all the other circumstances in determining whether or not there was probable cause for believing the accused guilty of the offense charged. McLeod v. McLeod, supra.

The evidence for the plaintiff tended to show that, while Block was not the prosecutor upon the face of the proceeding, yet he was in fact the originator of the entire matter, and that he was in truth and in fact the plaintiff's prosecutor, shielded and protected by the Ad Club; that he furnished all the means by which any evidence was secured upon which prosecution could be based. And we are of the opinion that, under the evidence as here disclosed the abandonment of the prosecution by the Ad Club was properly to be considered by the jury upon the question of probable cause. We are of the opinion, however, that this evidence was admissible upon the question of actual malice, as having some tendency to show prior animus on the part of Block. Plaintiff was a new competitor in the defendant's line of business, and we think the evidence for the plaintiff tended to show some activity on the part of defendant to remove plaintiff from that particular field of business, and that this prosecution was but other evidence of some feeling on the part of a restless competitor.

While there was no direct evidence to this effect, yet we entertain the view there was sufficient proof, however slight, from which the jury could infer that the continuance of the prosecution by the attorney after having been requested to drop the case by the Ad Club was at the defendant Block's instigation, suggestion, or request. Under these circumstances, therefore, if the jury reached such conclusion, the persistence of the defendant in the prosecution, after the abandonment thereof by the Ad Club, was proper to be weighed by them upon the question of malice.

[8] The witness Kaufman was permitted to testify as to the value of the waists exhibited to him in the recorder's court. There was evidence tending to show that the particular waist purchased was used on the trial, and therefore the jury may infer that this particular waist was also exhibited to the witnesses in connection with other waists there shown, which came from the plaintiff's store. We think this evidence was competent upon the question of probable cause.

[9] Plaintiff testified that he employed counsel to defend him, and was asked how much was paid such counsel. The objection to this question by defendant upon the ground that it was incompetent, irrelevant, and immaterial was overruled; and this action of the court is assigned as error—citing Walker v. Gunnels, 188 Ala. 206, 66 South. 45; Boshell v. Cunningham, 76 South. 937;[1] Tutwiler Coal & Coke Co. v. Tuvin, 158 Ala. 657, 48 South. 79.

It was said in B. R., L. & P. Co. v. Humphries, 172 Ala. 495, 55 South. 307:

"While it is true that the defendant is not liable for any more than the reasonable value of the services, * * * yet neither is it liable for any more than has been actually paid or is due. So it is necessary to prove both, and both cannot be proved at once. The natural order is to prove what the charge is, and then prove whether or not it is reasonable."

The objection, it is noted, to the question was very general, and was not based upon the specific ground that such sum was not shown to be reasonable. It is clear therefore that the question was not objectionable upon these specific grounds, and that the court cannot be put in error for overruling the same.

[10] Counsel in this connection assign as error the refusal of charges instructing the jury that they were not authorized to assess damages for attorney's fee, which they found from the evidence plaintiff paid or incurred. As previously shown, the evidence as to what the plaintiff had paid was before the jury; no valid objection having been interposed thereto. Under these circumstances, therefore, it could not be wholly eliminated by the requesting of charges as was here attempted. Such was the holding

[1] 200 Ala. 579.

in B. R., L. & P. Co. v. Girod, 164 Ala. 10, 51 South. 242, 137 Am. St. Rep. 17.

[11] There was no reversible error in the refusal of the charge numbered (F), which constitutes the seventh assignment of error. It is argumentative, and in addition to that what we have previously said in regard to the admission of proof of withdrawing the prosecution by the Ad Club sufficiently discloses our view that it was otherwise faulty.

[12] Numerous charges were asked by the defendants, and refused, instructing the jury, in effect, that if any of the articles of merchandise were found to be of less value than stated, the verdict must be for the defendants. Most of these charges are objectionable upon the theory that they omit any reference to the facts and circumstances known to defendant at the time of the prosecution, and of his reasonable belief of the guilt of the plaintiff, as drawn therefrom. In addition to this, what we have said in discussing the refusal of the affirmative charge, we think, suffices to show that there was no error in this action of the court.

[13] The charge which constitutes assignment of error No. 16 was properly refused upon the theory that the same is misleading, as the jury might infer therefrom that the fact that the charge against the plaintiff was nol. pros'd, should not be considered by them in connection with all the other evidence upon the question of probable cause.

[14, 15] It is submitted that the judgment was highly excessive, and for that reason a new trial should have been awarded. The evidence as set out in the statement of the case will suffice to show that the jury were authorized to infer, not only malice, which arises as a matter of law from a want of probable cause, but also malice which springs from a motive to injure the accused, or to gain some advantage to the prosecutor, to secure some personal end, and that exemplary damages were recoverable in this action. Coleman v. Pepper, 159 Ala. 310, 49 South. 310.

In addition to this, the plaintiff was the sole manager, and largely interested in the business, of S. A. Williams & Co., which had been in operation only two months, and which, from the evidence, seems to have been meeting with some degree of success. There is also evidence tending to show that publicity was given to the prosecution of plaintiff in the newspapers of the city, and that it became a matter of considerable discussion. A business of this character is largely dependent upon the good will and trust of the

public. As relating to his line of business, the charge was a rather serious one, calculated to inflict considerable injury and place him at much disadvantage. Under such circumstances the damage actually sustained is difficult of precise measurement.

The rule in regard to the action of the court on the question of disturbing a judgment as being excessive in amount, is well understood, and need not be here repeated. Cent. of Ga. Ry. Co. v. White, 175 Ala. 60, 56 South. 574.

After a careful review of the record in this case, we have reached the conclusion there was no error in this ruling of the court, and that the judgment is not such as to call for any action upon our part.

[16] It is further argued that a new trial should be granted because the verdict of the jury was contrary to the law as charged by the court; and this insistence is based upon the fact that the court gave for the defendant a charge, which, it may appear, was probably more favorable to the defendant than was authorized by the facts of the case. In support of this contention counsel cite us to the case of Fleming v. L. & N. R. R. Co., 148 Ala. 527, 41 South. 683, where the court granted a new trial for the reason the jury brought in a verdict for $265 after the court had instructed the jury that the plaintiff could recover only nominal damages. Such a situation is not here presented, and we do not consider that case as an authority supporting the insistence here made.

The oral charge of the court, as well as charges given for the respective parties, are set out in the record, and the court very properly submitted the question of malice, and the existence vel non of probable cause for the consideration of the jury.

The mere fact, therefore, that the court gave to the jury for the defendants at their request one charge which was doubtless more favorable than was justified clearly does not present reversible error. Indeed, the holding of this court in the recent case of Tally v. Whitlock, 199 Ala. 28, 73 South. 976, is sufficient answer to this insistence.

We have here considered the assignments of error argued in brief by counsel for appellant, and have reached the conclusion that no reversible error is shown.

It results therefore that the judgment appealed from will be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.