61 So.2d 698

## SMITH v. STATE.

5 Div. 332.

Court of Appeals of Alabama.

Jan. 22, 1952.

Rehearing Denied March 13, 1952.

Reversed on Mandate Nov. 25, 1952.

626

Grover C. Walker, Clanton, and Rives & Godbold, Montgomery, for appellant.

Si Garrett, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

CARR, Presiding Judge.

The accused was indicted for the offenses of false pretenses and embezzlement. The indictment contained six counts. The indictee was convicted under the sixth count. This count is:

"The Grand Jury of said County further charge that before the finding of this Indictment, J. Lee Smith, alias James Lee Smith, while Chairman or President of the Court of County Commissioners of Chilton County, Alabama, one of the counties of the State of Alabama, who was then and there as such chairman or president, charged or entrusted with the collection, receipt, safekeeping, transfer or disbursement of money or funds belonging to, or under the control of, said County, did convert to his own use, or to the use of another person, contrary to law, a portion of such money or funds to about the amount of $200.00."

The appellant moved to quash the indictment. The motion was based upon an erroneous minute entry of the clerk of the court. This identical question was decided adversely to the contention of the appellant in the case of Wyatt v. State, ante, p. 125, 57 So.2d 350, certiorari denied 257 Ala. 90, 57 So.2d 366.

Appellant's demurrers to the indictment were overruled. A ground is posed that Count 6 is defective in not charging that the act was knowingly done.

Title 14, Sec. 127, Code 1940, upon which Count 6 of the indictment is based, is as follows:

"Whoever, being charged or in any manner intrusted with the collection, receipt, safe-keeping, transfer or disbursement of any money, funds, securities, bonds, choses in action or other property belonging to or under the control of the state or of any state officer, or belonging to or under the control of any county, civil or school township, city or town, or any officer thereof, converts to his own use, or to the use of any other person or corporation, in any manner whatever contrary to law, or uses by way of investment in any kind of property, or loans, either with or without interest, or deposits with any person or corporation contrary to law, or exchanges for other funds, except as allowed by law, any portion of such money, funds, securities, bonds, choses in action or other property is guilty of embezzlement, and, on conviction, shall be punished as if he had stolen the same."

In the case of Ex parte Cowart, 201 Ala. 525, 78 So. 879, the Supreme Court held that under Sec. 6838, Code 1907, with some additions now Sec. 140, Title 14, current code, a fraudulent intent is not an essential ingredient of the crime.

The court in the same case held that under Sec. 6831, Code 1907, Sec. 133, Title 14, current code, fraudulent intent is an essential ingredient of the charged offense.

After the Cowart case was decided, Sec. 3961, Code 1923, Sec. 127, Title 14, supra, was added. This addition may have been inspired by the holding in the Cowart case. Justice Foster expressed this view in McGilvray v. State, 228 Ala. 553, 154 So. 601.

In the latter case the indictment charged that the defendant did "embezzle or fraudulently convert to his own use money to about the amount of $40.00."

In response to the questions presented for review Justice Foster observed:

"The ordinary meaning of 'embezzlement or fraudulent conversion' is that a fraudulent intent is included. Ex parte Cowart, supra. But section 3961, Code, makes embezzlement include certain conduct there definitely defined, *which does not include a fraudulent intent.* So that the charge of embezzlement includes the acts there specified. The indictment in this cause could be sustained by proving those acts, and the court did not err in submitting them to the jury as being included in it." (Emphasis ours.)

In the case of Garner v. State, 26 Ala. App. 246, 158 So. 543, the indictment was based on a violation of Sec. 127, Title 14, as it appears in our current code.

We held that the indictment followed the statute and charged every material ingredient of the offense. The indictment, which we have examined in the court record, does not contain an allegation of a fraudulent intent.

On certiorari Justice Foster, again writing for the Supreme Court held, 229 Ala. 600, 158 So. 546:

"Under our statutes, 'embezzlement' includes statutory offenses which do not embrace all the elements of the English offense of embezzlement. The acts made a crime by section 3961, Code omit some of the essentials of that crime, but the statute declares that such conduct is embezzlement. So that to sustain a conviction on a charge of embezzlement under that Code section, it is not necessary that all the elements of the offense as it existed under the early English act (Knight v. State, 152 Ala. 56, 44 So. 585) be proven or charged, if the acts declared by the statute are proved and charged. And a general charge of embezzlement may be proven by such statutory requirements. McGilvray v. State, 228 Ala. 553, 154 So. 601.

"We cannot agree with petitioner therefore that an indictment under section 3961, Code, must aver possession

of the funds by defendant or a fraudulent intent."

The question of instant concern was up for review before this court in Smith v. State, 26 Ala.App. 271, 157 So. 872. We there held that it was not necessary to allege a fraudulent intent in an indictment drawn under Sec. 3961 which is the progenitor of Sec. 127, Title 14, supra.

This view was not disapproved by the Supreme Court on certiorari. 229 Ala. 207, 157 So. 874; 230 Ala. 700, 159 So. 912.

In consonance with these authorities and the historical background of the statute in question, we think that the conclusion is inescapable that Count 6 of the indictment is not subject to the indicated demurrer.

The fifth ground of the demurrer to Count 6 of the indictment poses this position:

"The Court judicially knows that the Chairman or President of the Court of County Commissioners of Chilton County, Alabama, was not charged or entrusted by law with the collection, receipt, safekeeping, transfer or disbursement of money or funds belonging to or under the control of said county."

In support of this ground appellant's attorney urges that the county treasurer and the judge of probate of the county are officers entrusted with the above delineated duties, and therefore the probate judge in his capacity as chairman or president of the court of county commissioners is not so entrusted and cannot be the person subject to prosecution under Title 14, Sec. 127, supra.

Sec. 5, Title 12, Code 1940 provides in part:

"There is in every county a court of record, styled the court of county commissioners, composed of the judge of probate, as principal judge, and four commissioners * * *."

Under the same title of the code, we have Sec. 53:

"All acts required by law to be performed with respect to county funds other than the receipt and disbursement of county funds by the county depository, shall be performed by the presiding officer of the board of revenue, or the presiding officer of the court of county commissioners or other like officer."

And Sec. 76:

"No warrant shall be issued or check drawn on the county treasury or county depository by any person except the judge of probate or chairman of the board of revenue, or like governing body, or such other officer as may be designated by such board unless otherwise provided by law * * *."

The section just above, in directing who is authorized to draw warrants, makes no distinction in the capacity in which the probate judge acts.

The statute under which the appellant was indicted includes persons who are in any manner entrusted with the collection, receipt, safekeeping, transfer, or disbursement of any county funds.

We judicially know that the appellant was Judge of Probate and Chairman of the Court of County Commissioners of Chilton County.

The probate judge, acting under his statutory authority in drawing warrants, or having it done, is performing a necessary part of disbursing or transferring county funds.

In the case at bar the undisputed evidence discloses that the appellant followed this procedure and received in this manner the amount of money he is charged with having embezzled.

Clearly the indictment is not subject to the ground of demurrer of instant concern.

The trial judge denied to appellant's counsel the privilege of asking prospective jurors, on voir dire, the following question:

"If you found from the evidence that the Defendant, J. Lee Smith, had drawn one hundred or two hundred dollars as ex officio fees from the County Treasury, and to which fees it may now appear he was not legally entitled, if he drew such fees openly, un-

der a good faith claim of right, and without any criminal intent, would such evidence prejudice you or prevent you from giving the Defendant, J. Lee Smith, a fair trial, or from finding the Defendant, J. Lee Smith, not guilty if the evidence was not sufficient to convince you beyond a reasonable doubt that at the time he drew such fees said J. Lee Smith intended to commit a crime or had the necessary criminal intent? If so please hold up your hand and give your name."

Without question the right of either party in civil or criminal cases to examine jurors as to their qualifications, interest, or bias that would affect a fair and impartial trial, should be liberally extended and freely granted. Title 30, Sec. 52, Code 1940; Dyer v. State, 241 Ala. 679, 4 So.2d 311.

The purpose of the privilege is to afford information to the parties relating to the qualifications of the jurors, so that the right of peremptory challenge may be exercised advisedly. It is not contemplated that the right should extend to questions concerning matters which involve intricate legal principles. Primarily the inquiry should relate to information which has to do with the interest or bias of the jurors. J. B. McCrary Co. v. Phillips, 222 Ala. 117, 130 So. 805.

In the case of Matney v. State, 26 Ala. App. 527, 163 So. 656, we held that it was not error to refuse to permit counsel to inquire of a prospective juror whether or not he would feel bound by testimony of a named witness as to alcoholic content of beer.

The rule prevails that the right of instant concern rests largely within the sound discretion of the trial judge. Louisville & N. R. Co. v. Davis, 236 Ala. 191, 181 So. 695; Leath v. Smith, 240 Ala. 639, 200 So. 623; Logan v. State, 251 Ala. 441, 37 So.2d 753.

In the main the evidence in the case appears without substantial conflict.

The appellant's compensation as probate judge exceeded the amount of $5000.00 per annum.

Under the provisions of Title 11, sec. 29, Code 1940 he was not entitled to receive ex officio fees for road service. Despite the mandate of the statute, admittedly he did receive during his tenure in office as probate judge the sum of $200.00 for said ex officio service.

The indictment is based on the unauthorized receipt of this fee.

As we interpret the evidence, the appellant's defense is directed to an explanation of his admitted conduct, rather than a legal justification of the charged offense. In brief he contends that his predecessor collected the ex officio fees; that he had been advised by attorneys and other probate judges in the State that the statute forbidding the collection of the fee was likely unconstitutional; that he had been given assurance by the attorney general's office that a case would be instituted to test the constitutionality of the act.

It should be noted that the appellant, without authority of law, had collected the ex officio fees for road service during his entire tenure in office as probate judge. This was done in spite of the fact that the State examiner had charged these prior collected amounts back to the appellant.

It appears from the evidence that these payments were made to the defendant with full knowledge and assent of the other members of the commissioners' court.

There were comparatively few objections interposed and rulings of the court thereon during procedure incident to the introduction of the evidence.

We have examined the questions which were presented and given due consideration to them. Under the factual issues in the case and the slight conflicts relating thereto, the rights of the accused could not have in any manner been affected by any of these rulings.

Appellant's counsel makes the insistence that the general affirmative charge was due defendant because the evidence fails to establish that he, as chairman or president of the court of county commissioners, was charged or entrusted with the collection, safekeeping, or disbursement of

the funds alleged in Count 6 of the indictment.

What we have written herein above fully illustrates our view of this position.

It is urged also that the affirmative charge was due the appellant because of a variance between the allegations of Count 6 of the indictment and the proof.

The burden of this insistence is that the evidence shows that the only funds alleged to have been converted by the defendant was the sum of $200.00 received by him as ex officio fees for road duties, and for this illegal and unauthorized receipt the prosecution should have been based on Title 11, Sec. 32, Code 1940.

In the case of Garner v. State, supra, this court and the Supreme Court sustained a judgment of conviction for embezzlement based on Sec. 127, Title 14, supra. The officer involved was a city commissioner. We will not attempt to analyze the opinion, but the reasoning of the court and the conclusions therein reached lead to the inescapable view that this authority sustains our opinion that the instant case is based on an applicable statute.

We have attempted to illustrate herein above the statutory provisions relating to the issuing of warrants on the county treasury or county depository.

While the appellant was probate judge and presiding officer of the court of county commissioners, he filed a claim against Chilton County for the indicated amount for ex officio fees in connection with his duties relating to the public roads of the county. He directed or caused the clerk of the court of county commissioners to draw a warrant against the funds of the county for the amount of the claim. This warrant was delivered to appellant and credited to his account at the local bank.

Sec. 127, Title 14, supra, is directed against the embezzlement of public funds by anyone who is charged or entrusted with the collection, receipt, safekeeping, transfer, or disbursement of said funds.

In the case at bar the indictment by its averments fixes the relationship of the appellant as one who was charged or entrusted with the collection, etc. of such funds. The evidence supports these averments in the indictment.

The trial judge in his oral charge stated:

"Now gentlemen, before you can convict the Defendant under count six and under that code section, the burden is on the State to prove from the evidence in the case beyond a reasonable doubt that the Defendant knowingly and intentionally converted to his own use funds belonging to Chilton County and that he was such an officer at the time that he received or disbursed such funds and that he converted them to his own use contrary to the law, knowingly and intentionally doing so."

At the instance of the appellant the court gave written instructions which in effect declared the law to be in accord with the above copied excerpt from the oral charge. In brief appellant's counsel urges that whether correct or not these instructions declared the law of the case and in consonance with this declaration the verdict was contrary to the great weight of the evidence.

Justice Brown stated the doctrine upon which insistence is made in the case of Franklin Fire Ins. Co. v. Slaton, 240 Ala. 560, 200 So. 564, 566:

"The oral charge of the court and the special charges given at the request of the parties constituted the law of the case for the guidance of the jury on the trial. Whether or not the charge, thus constituted, correctly states the law is not a matter for jury consideration, and if the verdict of the jury when considered in the light of the court's charge is contrary to the undisputed evidence, or against the great weight of the evidence, on motion for new trial it should be set aside."

"A party cannot properly be heard by motion for a new trial to complain of an instruction that was favorable to him, or was more beneficial to him than to the adverse party, or was more favorable to him than he was entitled to, or was invited, offered, or requested by him". 66 C.J.S., New Trial, § 44

(3), page 150. See also, Parisian Co., Inc., v. Williams, 203 Ala. 378, 83 So. 122.

■ Be this as it màywe do not think that we should disturb the judgment of the trial judge in his action in overruling the motion for a new trial. We entertain this view if we consider the weight of the evidence in application to the indicated instructions. Cobb v. Malone, 92 Ala. 630, 9 So. 738.

Appellant urges that Sec. 29, Title 11, supra, is unconstitutional. The attack is focused on the portion which provides:

"Discharging his duties in relation to public roads, on proof to the county commissioners that he has discharged such duties, annually, to be paid out of the county treasury, not exceeding $400.00.

"But this shall not apply, to any probate judge who receives net annual compensation from his office exceeding five thousand dollars." (Emphasis ours.)

It is insisted that this part of the statute offends either or all of the following sections of the Constitution: Sec. 96, Subsec. (24) of Sec. 104, Sec. 110.

Subsection (24) covers much the same matter as Sec. 96 and should be viewed as cumulative and coextensive with the latter section.

Both Sec. 96 and Sec. 110 have a field of operation. The latter section is general in terms. It designates the entire state as the unit of affectibility. As related to the subject matter of an act the basis of classification becomes a matter of great concern and importance.

The intents and purposes of the provisions are apparent. They seek to prevent the passage of laws which would have the effect of nonconformity in the matter of the indicated allowances of the public officials of the state.

This insistence is made in brief of appellant's counsel:

"If that provision should be held not to violate Section 96 of the Constitution, then it would convert the law into a local law because it would make it applicable not to the whose state but only to the counties in the state where the probate judge's net annual compensation was more or less than $5000.00. Within the definition of Sec. 110 of the Constitution, supra, the law would then be a local law, but Sec. 104, Subd. 24, supra, prohibits the legislature from passing a local law creating, increasing or decreasing fees or allowances to public officers."

The distinction between the terms "general laws" and "local laws" as applied to constitutional provisions has had the attention of our courts many times.

■ Broadly and generally considered, a "general law", within the purview of constitutional provision, is a law which affects all the people of the state or all the people of a particular class. The law will lose its general characteristics if the subject matter and provisions are so specific that it can only apply to or affect one locality, person, or thing.

However a law is not necessarily classified as local simply because its application has the effect of limiting its provisions to meet local conditions.

As is stated in 59 C.J., Statutes, Sec. 318C, pp. 730 and 731:

"While a statute which is applicable to all of the people of the state and which operates in all parts of the state is most general in its character it is not necessary that a law, in order to be general, shall affect all of the people of the state, or all of the state, nor need it include all classes of individuals; it may be intended to operate over a limited number of persons or things, or within a limited territory, and if every person or locality brought within the relations and circumstances provided for by the law is affected, the law may be, general although presently operative on but a single individual, or thing, place, or political subdivision, such as a county or municipal corporation; and its general character is not affected by the number of persons, things, or localities which come within the scope of its operation. On the other hand, a

statute cannot be classed as general when only one county within the state can ever come within its operation or where the description is so specific that it can apply only to particular persons or things existing at the time of its enactment."

The Supreme Court had this to say in State ex rel. Attorney General v. Sayre, as Judge, etc., 142 Ala. 641, 39 So. 240, 241:

"It appears to be beyond question, as has been suggested, that when the Constitution defines a general law to be one that applies to the whole state, and that a local law is one which applies to any particular subdivision or subdivisions of the state less than the whole, it has reference to statutes in their territorial application, and not in their subject-matter."

In the case of Vaughan v. State ex rel. Barker, 212 Ala. 461, 103 So. 38, the Supreme Court reviewed the question of the constitutionality of an act "to provide for the payment of ex officio fees to clerks to circuit courts in all counties of this state having at the last federal census or any subsequent federal census, a population of not less than 53,401 and not more than 58,401."

The court held that judicial notice led to the conclusion that at the time of the passage of the act its provisions could only apply to Dallas County. The effect of the court's holding was that this act was not general and therefore was violative of the sections of the Constitution of instant concern.

It should be noted that Justice Bouldin, writing for the court, made this pertinent observation:

"The general thought, as heretofore expressed in our decisions, is uniformity throughout the several counties of the state where costs and fees accrue. We may add that this principle of uniformity—like pay for like service —does not prevent the classification of all the counties by general law on a basis of population or tax values, in fixing a just allowance for ex officio services, as found in Code of 1923, §

7280. Indeed some such classification is necessary to any semblance of uniformity. But in fixing the classification it is the mandate of section 96 that it shall cover and be applicable to all the counties of the state, and not to a single class within specified limits of population."

Section 7280, Code 1923, referred to by Justice Bouldin, is Sec. 24, Title 11, as amended by Act 224, Reg. Session 1943, current code. It fixes the ex officio fees of the clerks of the circuit courts in the several counties of the state on the basis of the assessed value of real and personal property. This classification is approved as a law with general application.

If the act of instant concern offends the constitutional provisions, it seems clear and logical that Sec. 24, Title 11, supra, would have to come under the same condemnation.

Discussions of the definition and character of general and local laws as applied to our constitutional provisions may be found in the opinions in the following cases: State ex rel. Covington v. Thompson, 142 Ala. 98, 38 So. 679; Holt v. Mayor and Aldermen of Birmingham, 111 Ala. 369, 19 So. 735; McCall v. Automatic Voting Machine Corp., 236 Ala. 10, 180 So. 695. See also, 18 Alabama Digest, Statutes, ⬅ 66 and 68.

We come finally to review the written instructions which were refused to the defendant.

The general affirmative charge has already had our consideration.

Charges 2A, 3A, 4A, 5A, and 6A were made abstract by the verdict of the jury.

Charge number 15 pretermits a consideration of all the evidence. Jones v. State, 21 Ala.App. 234, 109 So. 189; Tatum v. State, 20 Ala.App. 24, 100 So. 569.

Charge number 16 was covered by the court's oral charge and given written instructions. Title 7, Sec. 273, Code 1940.

Charge 17, if not otherwise faulty, is not based on the evidence. Edwards v. State, 205 Ala. 160, 87 So. 179; Miller v. State, 34 Ala.App. 483, 41 So.2d 432.

We have attempted to give due consideration to each question presented by this appeal.

We find no prejudicial error in the record.

The judgment below is ordered affirmed. Affirmed.

### On Rehearing

CARR, Presiding Judge.

The appellant in his brief accompanying his application for rehearing has asked that in the event the application should be overruled the opinion of the court be extended so as to include certain facts and rulings of the trial court which do not appear in our original opinion. In compliance with this request, we extend our opinion so as to show the following:

On the question of the motion to quash the indictment, the appellant raised the point, both in the trial court and on appeal, that the effect of the motion of the State to amend the minutes was to amend the indictment without the consent of the defendant and over his objection, in violation of Section 253, Title 15, Code 1940. We hold that there was no error of the trial court in allowing said amendment without consent of the defendant and without giving ten days notice of the motion.

In his application for rehearing the appellant has raised the contention that under the oral and written charges of the court, if they be construed as consistent with each other, which was the construction we placed on them in our opinion, the verdict of the jury was contrary to the trial court's instructions, and was on its face inconsistent and contradictory because appellant was acquitted under the first five counts, and that these oral and written charges made the same issue under all counts. We conclude that this contention is not well taken, and in so doing we point out that in addition to the portion of the lower court's oral charge appearing in our original opinion, the following excerpts also appear in the oral charge:

"The State's contention here is that the Defendant is guilty as charged, that he purposely, knowingly, and intentionally converted the funds which are involved to his own personal use and that he did so knowingly and that it was contrary to law.

" * * * and he says further, that he is not guilty under any of the counts because he was under an honest belief that he was entitled to that money * * * that what he did he did honorably and under a bona fide and honest belief that the funds he drew were his. So that, briefly, is the issue, gentlemen, for you to decide."

Written charges 9 and 13, given by the trial judge at appellant's request, are as follows:

"9. The Court charges the jury that if the defendant, acted in the honest belief that he was entitled to ex officio fees in the amount of $200.00 and without any criminal intent, then he would be guilty of no criminal offense."

"13. The Court charges the jury that you cannot find the fefendant (sic) guilty under Count Six of the indictment you believe beyond a reasonable doubt that the defendant knowingly and unlawfully converted to his own use or to the use of another person, money or funds belonging to, or under the control of Chilton County, and if you have a reasonable doubt as to whether at the time of the conversion, the defendant acted in the honest belief that Chilton County was indebted to him for ex officio fees in the amount of $200.00, and that he was entitled to receive from Chilton County ex officio fees in said amount of $200.00, then you cannot find the defendant guilty under Count Six of the indictment."

On cross examination the defendant testified that he had an agreement with Judge McCleod, another Probate Judge in the state, with reference to a suit to test the constitutionality of Sec. 29, Title 11, supra. In this aspect the record discloses:

"Q. And Judge McCleod had not started the suit and the State was still demanding that you pay that—A. Hadn't collected it from the rest of them.

634

"Mr. Huddleston: We move to exclude that statement of the witness and ask that the Jury be instructed not to consider—

"The Court: That is excluded from your consideration, gentlemen, in making up your verdict. That is excluded from your consideration.

"Mr. Rives: I believe we will reserve an exception to that, your Honor."

Clearly, the answer which was excluded by the court was a voluntary statement, not based on facts that the witness was shown to possess. The ruling of the court in this particular was not error.

We are glad to extend the opinion in this manner, for this court desires that appellant shall have full review before the Supreme Court should he desire to seek it.

Application for rehearing overruled.

PER CURIAM.

Reversed and remanded on authority of Smith v. State, 61 So.2d 707.