BOLIN, Justice.
The Town of Mosses (“the Town”) and its employee, Jimmy Harris, the Town’s *1205 chief of police, separately petition this Court for a writ of mandamus directing the Lowndes Circuit Court to enter a summary judgment in their favor on certain claims asserted against them by Geraldine Grant Bryson. We have consolidated their petitions for the purpose of writing one opinion.

Facts

At the time of the events giving rise to this action, Bryson operated an entertainment venue known as “The Spot.” Bryson described “The Spot” as a “community center for all activities.” “The Spot” had pool tables and arcade games, sold food, and hosted social and recreational events. Bryson obtained from the Town a business license to operate “The Spot”; the license prohibited the sale of alcohol on its premises. Bryson subsequently requested that the Town grant her a liquor license, but the Town’s council denied her request. It is undisputed that Bryson was never granted a liquor license for “The Spot,” by either the Town or the State of Alabama Alcoholic Beverage Control Board (“the ABC Board”).
Bryson rented “The Spot” to a deejay, who planned to host an event on its premises on the evening of May 2, 2010. Bry-son was paid a rental fee of $75. The deejay hosting the event distributed flyers in the community advertising that a “beer bash” was going to be held at “The Spot” on May 2, 2010. Bryson testified that she did not participate in distributing the flyers in the community and that she did not learn of the flyers until the evening of the event. Approximately 200 people turned out for the event at “The Spot,” even though the entertainment portion of the event was ultimately canceled by the deejay. Although Bryson, who was at “The Spot” on the night of May 2, 2010, testified that she did not see anyone consuming alcoholic beverages at the event, she acknowledged that the deejay hosting the event had brought alcohol to “The Spot” that he planned to “give .., away [to] the community for showing support for the center.”
Walter Hill, the Town’s mayor, was contacted by a citizen and was told that flyers were being circulated in the community advertising a “beer bash” at “The Spot” at which individuals could pay an admission fee and consume alcohol inside “The Spot.” Hill stated that he notified Harris, the Town’s police chief, of the call informing him of the “beer bash” being advertised at “The Spot.” Hill told Harris that the matter needed to be investigated and that he would contact the Drug Task Force for the 2d Judicial Circuit (“the task force”) as to how to proceed. In the meantime, Harris had obtained one of the flyers advertising the “beer bash” at the “The Spot,” which stated that the price of admission to the event was $7.00. Harris then drove by “The Spot” and witnessed several people standing outside. Pursuant to the instructions received from the task force, Harris, along with officers from other law-enforcement agencies, entered “The Spot,” where they observed people consuming alcohol.
Harris testified that he did not actually witness the sale of alcohol on the premises of “The Spot,” but he stated that it was his understanding that the business license the Town issued for “The Spot” prohibited alcohol from even being present on the premises. According to the police report of the events on May 2, 2010, Bryson was arrested for “selling alcohol without [a] license.”[1] Harris testified that Kelvip *1206 Mitchell, police chief for the City of Hayneville, which participated in the seizure and arrest at “The Spot,” made the determination to arrest Bryson. Bryson testified that Harris arrested her. Over 200 bottles of beer were seized from the premises. The charges against Bryson were ultimately dismissed because the Town was unable to produce a witness who could testify to paying an admission to “The Spot” and drinking alcohol on the premises.
On May 2, 2012, Bryson sued the Town and Harris, in his individual capacity, in the Lowndes Circuit Court, asserting claims of malicious prosecution, false arrest, false imprisonment, harassment, intentional infliction of emotional distress, libel, and slander. Bryson specifically alleged that Harris was acting within the line and scope of his employment as the Town’s chief of police when she was arrested and that her claims arose from the willful and intentional acts of the defendants, which she says were designed to embarrass and harm her. On August 24, 2012, the defendants answered Bryson’s complaint, generally denying the allegations and asserting certain affirmative defenses, including the defense of immunity.
On May 18, 2015, the defendants moved the trial court for a summary judgment, arguing, among other things, that Harris had probable cause to arrest Bryson and that Harris was immune from suit pursuant to § 6-5-338(a), Ala.Code 1975, and the doctrine of State-agent immunity set forth in Ex parte Cranman, 792 So.2d 392 (Ala.2000), a plurality opinion, and adopted by this Court in Ex parte Butts, 775 So.2d 173 (Ala.2000). The Town argued that it is absolutely immune from suit for all intentional torts of its agents pursuant to § 11-47-90, Ala.Code 1975, and that it also enjoys the State-agent immunity afforded Harris, as its employee.
On August 3, 2015, Bryson filed a response in opposition to the defendants’ summary-judgment motion, presenting certain evidence that, she says, establishes that Harris’s actions relative to her arrest were motivated by malice toward her. Bryson also challenged the defendants’ reliance upon the affidavit of Valencia Aaron, an enforcement agent with the ABC Board, that the defendants presented in support of their summary-judgment motion. Bryson moved to strike the affidavit, arguing that the defendants failed to produce the affidavit in a timely manner and that Aaron had failed and/or refused to make herself available to Bryson for a deposition.
On August 4, 2015, the defendants filed a response in opposition to Bryson’s motion to strike Aaron’s affidavit, contending that they had produced Aaron’s statement to Bryson on May 8, 2014, in response to certain interrogatories propounded to them on April 24, 2014. The defendants also argued that they had no affiliation with Aaron and thus had no ability to compel her testimony.
On August 13, 2015, the trial court entered an order striking Aaron’s affidavit and denying the defendants’ motion for a summary judgment. The defendants separately petitioned this Court for a writ of mandamus. We grant Harris’s petition in part and deny it in part and issue the writ (case no. 1141345); we grant the Town’s petition and issue the writ (case no. 1141385).

Standard of Review

“ ‘While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion grounded on a claim of immunity is reviewable by petition for writ of mandamus. Ex parte. Purvis, 689 So.2d 794 (Ala.1996)....
*1207 “‘Summary judgment is appropriate only when “there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” Rule 56(c)(3), Ala. R. Civ. P., Young v. La Quinta Inns, Inc., 682 So.2d 402 (Ala.1996). A court considering a motion for summary judgment will view the record in the light most favorable to the nonmoving party, Hurst v. Alabama Power Co., 675 So,2d 397 (Ala.1996), Fuqua v. Ingersoll-Rand Co., 591 So.2d 486 (Ala.1991); will accord the nonmoving party all reasonable favorable inferences from the evidence, Fuqua, supra, Aldridge v. Valley Steel Constr., Inc., 603 So.2d 981 (Ala.1992); and will resolve all reasonable doubts against the moving party, Hurst, supra, Ex parte Brislin, 719 So.2d 185 (Ala. 1998).
“ ‘An appellate court reviewing a ruling on a motion for summary judgment will, de novo, apply these same standards applicable in the trial court. Fu-qua, supra, Brislin, supra. Likewise, the appellate court will consider only that factual material available of record to the trial court for its consideration in deciding the motion. Dynasty Corp. v. Alpha Resins Corp., 577 So.2d 1278 (Ala,1991), Boland v. Fort Rucker Nat’l Bank, 599 So.2d 595 (Ala.1992), Rowe v. Isbell, 599 So.2d 35 (Ala.1992).’ ”
Ex parte Turner, 840 So.2d 132, 135 (Ala. 2002) (quoting Ex parte Rizk, 791 So.2d 911, 912-13 (Ala.2000)). A writ of mandamus is an extraordinary remedy available only when the petitioner can demonstrate: “ ‘(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.’” Ex parte Nall, 879 So.2d 541, 543 (Ala.2003) (quoting Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001)).

Discussion

As an initial matter, we note that Bry-son filed in this Court—in response to each petition for a writ of mandamus—a document entitled “preliminary opposition” to the petition. Bryson states in each of those documents that the Town and Harris have relied so extensively on Aaron’s stricken affidavit in the briefs filed in support of their petitions for a writ of mandamus as to have irreparably tainted those petitions. Bryson moves this Court to strike the briefs filed by the Town and Harris in support of their petitions for a writ of mandamus and to deny their petitions.
Despite the fact that the Aaron affidavit was stricken by the trial court, the defendants now rely upon it in their petitions for a writ of mandamus. Whether to strike an affidavit is a decision left to the sound discretion of the trial court. Ex parte Secretary of Veterans Affairs, 92 So.3d 771 (Ala.2012). On review by mandamus, this Court must look only at the facts and evidence that were before the trial court. Ex parte East Alabama Med. Ctr., 109 So.3d 1114 (Ala.2012); Ex parte Verbena United Methodist Church, 953 So.2d 395 (Ala.2006).
We cannot say the trial court exceeded its discretion in granting Bry-son’s motion to strike the Aaron affidavit. Therefore, because that affidavit was not considered by the trial court, we will not give it any consideration in deciding the merits of the defendants’ petitions. Ex parte Michelin North America, Inc., 161 So.3d 164 (Ala.2014). However, because the Aaron affidavit was one of a number of evidentiary filings submitted in support of the defendants’ summary-judgment motion and because those other evidentiary mate *1208 rials have been submitted to this Court as exhibits to the defendants’ petitions, we deny Bryson’s motion to strike their briefs filed in support of those petitions in their entirety because there is sufficient evidence before this Court to make a determination as to the merits of the petitions without considering the Aaron affidavit.

1. Harris’s Petition (No. 11⅛13⅛5)

The False-Arrest/False-Imprisonment Claims

Harris argues that he is immune from suit based on the immunity afforded peace officers by § 6-5-338(a), Ala.Code 1975, and by the doctrine of State-agent immunity set forth in Ex parte Cranman, supra.
Section 6-5-338(a) provides:
“Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.”
The restatement of State-agent immunity as set out by this Court in Ex parte Cran-man, supra, governs the determination whether a peace officer is entitled to immunity under § 6-5-338(a). Ex parte City of Tuskegee, 932 So.2d 895, 904 (Ala.2005). This Court, in Cranman, set out the following test for State-agent immunity:
“A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
“(1) formulating plans, policies, or designs; or
“(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
“(a) making administrative adjudications;
“(b) allocating resources;
“(c) negotiating contracts;
“(d) hiring, firing, transferring, assigning, or supervising personnel; or
“(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
“(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons; or
“(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
*1209 “Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.”
792 So.2d at 405. Because the scope of immunity afforded law-enforcement officers set forth in § 6—5—338(a) was broader than category (4) of the Cmnman restatement, this Court, in Hollis v. City of Brighton, 950 So,2d 300, 309 (Ala.2006), expanded and modified category (4) of the Cmnman restatement to read as follows:
“ ‘A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
[[Image here]]
“ ‘(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala.Code 1975’”
(Added language emphasized.)
‘“This Court has established a “burden-shifting” process when a party raises the defense of State-agent immunity.’ Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala.2006). A State agent asserting State-agent immunity ‘bears the burden of demonstrating that the plaintiffs claims arise from a function that would entitle the State agent to immunity.’ 946 So.2d at 452. Should the State agent make such a showing, the burden then shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in Cmnman is applicable.”
Ex parte Kennedy, 992 So.2d 1276, 1282 (Ala.2008).
It is undisputed that Harris, as the Town’s police chief, qualified as a law-enforcement officer for the purposes of § 6-5-338(a) and Ex parte Cranman, as modified by Hollis. In order to enjoy the immunity afforded law-enforcement officers under § 6-5-338(a) and Ex parte Cranman, Harris must have been, at the time of the complained-of action, “exercising judgment in the enforcement of the criminal laws of the State ... including ... arresting or attempting to arrest persons,” or serving as a peace officer under circumstances entitling such officer to immunity “from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.” Generally, arresting a person is considered an exercise of a discretionary function entitling the arresting officer to State-agent immunity. Swan v. City of Hueytoivn, 920 So.2d 1075 (Ala.2005).
After reviewing the materials in support of the defendants’ petitions for a writ of mandamus, we conclude that Harris has satisfied his initial burden of demonstrating that at the time of the incident made the basis of Bryson’s claims Harris was engaged in a law-enforcement function for which State-agent immunity would be available under § 6-5-338(a) and Ex parte Cranman, as modified by Hollis. The evidence presented in support of the defendants’ summary-judgment motion *1210 demonstrates the following: (1) that Harris was aware that Bryson did not have a license “to sell, [to] offer for sale, or [to] have in possession for sale,” § 28-3A-25(a)(14), Ala.Code 1975, any alcohol at “The Spot”; (2) that Harris was notified of the existence of flyers advertising that a “beer bash” was going to be held at “The Spot” on May 2, 2010; (3) that Harris obtained a flyer advertising the “beer bash” at the “The Spot”; (4) that Harris drove by “The Spot” on May 2, 2010, and witnessed several people standing outside; (5) that Harris and other law-enforcement officers entered “The Spot” and saw people consuming alcohol inside; (6) that Bry-son was arrested; and (7) that over 200 bottles of beer were seized from the premises.
However, relying upon this Court’s decision in Telfare v. City of Huntsville, 841 So.2d 1222 (Ala.2002), Bryson argues that Harris was not engaged in a discretionary function and, therefore, was not entitled to State-agent immunity because, she says, he lacked the lawful authority to arrest her. Specifically, Bryson argues that, because the criminal conduct for which she was arrested was classified as a misdemeanor and because Harris did not witness her actually selling alcohol on the premises, Harris, in arresting her, could not be considered as being engaged in a discretionary function, i.e., Harris was not making a lawful arrest. Thus, Bryson contends, Harris is not entitled immunity.
In Telfare, the plaintiff and his girlfriend became involved in a physical altercation with other patrons at a nightclub. After the initial altercation, the plaintiff and his girlfriend attempted to leave the nightclub. However, as the two left the nightclub several patrons followed them and attacked the girlfriend. The plaintiff attempted to break up the altercation; he ultimately removed his girlfriend from the altercation, and they retreated to the plaintiffs vehicle and prepared to leave the scene. In the meantime, a police officer arrived at the nightclub in response to a call regarding the altercation. The patrons who had been fighting with the plaintiffs girlfriend indicated to the police officer that the plaintiff and his girlfriend had instigated the altercation. The police officer approached the plaintiffs vehicle with his gun drawn and ordered the plaintiff to get out of his vehicle and to lie on the ground. The plaintiff got out of the vehicle but refused to lie on the ground. The police officer holstered his gun and withdrew an expandable baton that he used to strike the plaintiff in the legs until he was subdued and handcuffed. The plaintiff, who had sustained numerous contusions to his legs and lower body, was charged with disorderly conduct, harassment, and resisting arrest. Telfare, supra,
The plaintiff sued the police officer and the city, alleging, among other things, false arrest, false imprisonment, and assault and battery. The city moved to dismiss the complaint, arguing that it was entitled to discretionary immunity pursuant to § 6-5-338. The trial court granted the city’s motion to dismiss. Telfare, supra.
On appeal, the city contended that § 6-5-338(a) granted the police officer immunity from tort liability arising out of the performance of his discretionary functions so long as those functions were within the line and scope of his official duties. The city further asserted that § 6-5-338(b) extended to the city the same immunity afforded the police officer pursuant to § 6-5-338(a). The plaintiff argued that the police officer was not engaged in a discretionary function because, he said, the police officer arrested him for a misdemean- or that was not committed in the officer’s presence. This Court set forth the rule and statutory provisions that govern a *1211 warrantless arrest. Rule 4.1(a)(1), Ala. R.Crim. P., states:
“(1) A law enforcement officer may arrest a person without a warrant if:
“(i) The law enforcement officer has probable cause to believe that a felony has been committed, or is being committed, and that the person to be arrested committed it, or
“(ii) Any offense has been committed in the law enforcement officer’s presence or view, or
“(iii) The arrest is otherwise authorized by statute, such as Ala.Code 1975, §§ 32-5-171, 32-5A-191, 15-10-3.”
Further, § 15-10-3(a), Ala.Code 1975, provides:
“An officer may arrest a person without a warrant, on any day and at any time in any of the following instances:
“(1) If a public offense has been committed or a breach of the peace threatened in the presence of the officer.
“(2) When a felony has been committed, though not in the presence of the officer, by the person arrested.
“(3) When a felony has been committed and the officer has reasonable cause to believe that the person arrested committed the felony.
“(4) When the officer has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed.
“(5) When a charge has been made, upon reasonable cause, that the person arrested has committed a felony.
“(6) When the officer has actual knowledge that a warrant for the person’s arrest for the commission of a felony or misdemeanor has been issued. ...
“(7) When the officer has reasonable cause to believe that a felony or misdemeanor has been committed by the person arrested in violation of a protection order....
“(8) When an offense involves domestic violence ... and the arrest is based on probable cause, regardless of whether the offense is a felony or misdemeanor.”
In determining that the police officer was not engaged in a discretionary function and therefore was not entitled to discretionary-function immunity pursuant to § 6-5-338(a), this Court stated:
“The City correctly asserts that Officer McCarver was effectuating an arrest. However, the record before this Court indicates that [the plaintiff] was apparently arrested for misdemeanor offenses not committed in the presence of Officer McCarver. Generally, Alabama’s Rules of Criminal Procedure and the statutes quoted above do not allow law-enforcement officers the discretion to arrest alleged wrongdoers for misdemeanors not committed in the presence of the arresting officer.
[[Image here]]
“Here, viewing the evidence in a light most favorable to [the plaintiff] as the nonmovant, we must conclude that Officer McCarver arrested [the plaintiff] for various misdemeanors, none of which was committed in Officer McCarver’s presence. Because there is no evidence in the record tending to show that Officer McCarver was pursuing a discretionary function, i.e., was effectuating a lawful arrest, the City has failed to demonstrate that it is entitled to immunity. Considering the evidence in a light most favorable to [the plaintiff], as we must, we believe the trial court erred in dis *1212 missing [the plaintiffs] state-law claims.”
Telfare, 841 So.2d at 1229.
The facts in Telfare are distinguishable from the facts in the present case. The police officer in Telfare arrived on the scene after the altercation between the plaintiff, his girlfriend, and the other patrons had ended and the plaintiff and his girlfriend had returned to their vehicle and were preparing to leave. Based on statements from the patrons involved in the altercation, the police officer ordered the plaintiff to get out of his car and the plaintiff was then arrested following a straggle with the police officer. The events that prompted the police officer to arrest the plaintiff did not occur in the police officer’s “presence or view.” Rule 4.1(a)(l)(ii), Ala. R.Crim. P.
Here, although the evidence indicates that Harris did not witness Bryson selling alcohol, the evidence does indicate that Harris entered “The Spot” and saw people consuming alcohol with the knowledge that Bryson did not have a liquor license “to sell, [to] offer for sale, or [to] have in possession for sale,” § 28-3A-25(a)(14), Ala.Code 1975, any alcohol on the premises of “The Spot.” Further, over 200 bottles of beer were seized from “The Spot” while Harris was present. Based on these circumstances, we conclude that the conduct that prompted Bryson’s arrest occurred in Harris’s “presence or view.” Thus, Harris was engaged in a law-enforcement function, i.e., making a lawful arrest, that would entitle him to State-agent immunity. Because Harris established that he was engaged in a law-enforcement function that would entitle him to State-agent immunity, the burden then shifted to Bryson to show that one of the two categories of exceptions to State-agent immunity recognized in Cranman is applicable. Ex parte Kennedy, supra.
The exception Bryson argues here is that “the State agent act[ed] willfully, maliciously, fraudulently, in bad faith, [or] beyond his or her authority.” Cranman, 792 So.2d at 405. Bryson alleged in her complaint that Harris’s conduct in arresting her was “willful” and “malicious” and that it was done “intentionally” to embarrass and harm her. Bryson argued in her response in opposition to the defendants’ summary-judgment motion that Harris was not entitled to State-agent immunity because, she said, he acted “willfully, maliciously, fraudulently, [and] in bad faith” in arresting her. Ex parte Kennedy, supra. Bryson supports her argument by presenting evidence indicating that Harris and Bryson had a conflicting financial interest and that he held some personal animosity toward her. Bryson presented evidence indicating that Harris was involved in a personal relationship with Bryson’s sister, Mary Ann Hester Briscoe. Bryson and Briscoe had initially planned on being partners in “The Spot” and, according to Bryson, Harris had initially supported “The Spot.” However, Bryson and Briscoe had a “personal family disagreement,” and Briscoe decided to open a competing business known as “Barlow and Ann’s.” Bris-coe testified that Harris and Mayor Hill were partners with her in “Barlow and Ann’s.” Briscoe further testified that she intended for “Barlow and Ann’s” to be a restaurant but that Harris and Mayor Hill envisioned the business as a club that served alcohol. Bryson stated that Harris began harassing her and patrons of “The Spot” by parking his patrol car in front of the building to intimidate her and her customers. According to Briscoe, Harris and Mayor Hill were “desperate” to shut down “The Spot”—even to the extent of discussing the idea of planting drugs on Bryson or at “The Spot”—because, Briscoe testified, “The Spot” was “taking money out of *1213 their pockets.” Additionally, Bryson presented testimony indicating that Harris and Mayor Hill had conspired to expedite Briscoe’s liquor-licensing process while attempting to impede Bryson’s liquor-licensing process. There was also testimony indicating that when Harris received the flier advertising the “beer bash” he exclaimed: “Now I’ve got her ... I’m going to close her ass down tonight.”
Harris argues that, on the occasion made the basis of this action, he had probable cause to arrest Bryson and that there is no evidence indicating that he acted fraudulently or with any personal ill will, willfulness, or maliciousness, or in bad faith toward Bryson on the occasion of Bryson’s arrest.
A false arrest requires proof “‘that the defendant caused [her] to be arrested without probable cause.’ ” Walker v. City of Huntsville, 62 So.3d 474, 493 (Ala.2010) (quoting Higgins v. Wal-Mart Stores, Inc., 512 So.2d 766 (Ala.1987)). “[F]or a detention to be valid, the officer must reasonably, and in good faith, suspect the individual detained of being involved in some form of criminality.” Walker, 62 So.3d at 493 (quoting Higgins, 512 So.2d at 768). “Section 6-5-170, Ala.Code 1975, defines false imprisonment as ‘the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty.’ ” Walker, 62 So.3d at 492. A false arrest will support a claim of false imprisonment. Upshaw v. McArdle, 650 So.2d 875 (Ala.1994). As to false-arrest and false-imprisonment claims, “[p]robable cause exists where the facts and circumstances within the officer’s knowledge and of which he has reasonable trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed.” Walker, 62 So.3d at 492 (internal quotation marks omitted).
In Borders v. City of Huntsville, 875 So.2d 1168 (Ala.2003), this Court applied the standard of “arguable probable cause” in determining whether a police officer was immune from plaintiffs false-arrest claim pursuant to the immunity provided police officers in § 6-5-338(a). Arguable probable cause exists “when an officer makes an arrest lacking probable cause if officers of reasonable competence in the same circumstances and with the same knowledge would disagree as to whether probable cause existed.” Borders, 875 So.2d at 1179. See also Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir.2004)(noting that arguable probable cause exists where “ ‘reasonable officers in the same circumstances and possessing the same knowledge as the [arresting officer] could have believed that probable cause existed to arrest Plaintiff ”). Whether a police officer possesses probable cause or arguable probable cause to arrest an individual depends on the elements of the alleged offense and the operative set of facts. Brown v. City of Huntsville, 608 F.3d 724, 735 (11th Cir. 2010). Further, a showing of probable cause does not require evidence or information sufficient to support a conviction. Dixon v. State, 588 So.2d 903 (Ala.1991).
Bryson was arrested for selling alcohol without a license. Section 28-3A-25(a)(14) makes it unlawful “[f]or any person ... who ... has not been properly licensed under the appropriate provisions of this chapter to sell, offer for sale, or have in possession for sale, any alcoholic beverages.” Here, the evidence indicates that at the time Bryson was arrested, Harris knew that she did not possess a license “to sell, [to] offer for sale, or [to] have in possession for sale, any alcoholic beverages.” Harris had information via a flyer that a “beer bash” was to be held at “The Spot” on the night in question and that, *1214 upon payment of an admission fee of $7.00, patrons could enter the premises and be provided alcohol for consumption. Finally, upon Harris’s arrival at “The Spot” at the time designated on the flyer, he saw patrons of “The Spot” consuming alcohol. Based on the facts known to Hams at the time, he had at least arguable probable cause to arrest Bryson for illegally selling alcohol without a license. Because Harris had arguable probable cause to arrest Bry-son, we cannot say that he acted “willfully, maliciously, fraudulently, [or] in bad faith” so as to remove him from the umbrella of State-agent immunity afforded him under Ex parte Cranman. See Ex parte Tuscaloosa Cty., 796 So.2d 1100 (Ala.2000); Borders, supra; Wood v. Kesler, 323 F.3d 872, 884 (11th Cir.2003)(“The existence of probable cause, and in particular the facts showing that probable cause, contradict any suggestion of malicious intents or bad faith.”). Although we recognize that Bry-son has presented evidence indicating that Harris held some personal animosity toward her and that he had a competing financial interest, the fact remains that Harris had probable cause to arrest Bry-son for selling alcohol without a license on the occasion made the basis of this action. “When considering whether an arrest is valid, a police officer’s subjective intent is immaterial; the only requisite is that at the time the arrest is made, the police officer have probable cause.” Carruth v. Barker, 454 So.2d 539, 540 (Ala.1984). Thus, we conclude that Harris is entitled to State-agent immunity on Bryson’s false-arrest and false-imprisonment claims.

The Malicious-Prosecution Claim

To the extent that Bryson seeks to assert a malicious-prosecution claim against Harris, we note that she must prove “ ‘(1) that there was a judicial proceeding initiated by the present defendant; (2) that it was initiated without probable cause; (3) that it was initiated with malice on the part of the present defendant; (4) that that judicial proceeding was terminated in favor of the present plaintiff; and (5) that the present plaintiff suffered damage from the prosecution of that earlier action.’ ” Ex parte Tuscaloosa Cty., 796 So.2d at 1106 (quoting Kmart Corp. v. Perdue, 708 So.2d 106, 108 (Ala. 1997)). A malicious-prosecution claim is disfavored in the law because “[p]ublic policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge.” Moon v. Pillion, 2 So.3d 842, 845 (Ala.2008)(internal quotation marks omitted). Probable cause in the context of a malicious-prosecution claim is defined as “ ‘ “[a] reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged.” ’ ” Moon, 2 So.3d at 846 (quoting Eidson v. Olin Corp., 527 So.2d 1283, 1285 (Ala.1988), quoting in turn Parisian Co. v. Williams, 203 Ala. 378, 383, 83 So. 122, 127 (1919)). This Court has stated:
“ ‘The test that this Court must apply when reviewing the lack-of-probable-cause element in a malicious prosecution case in which summary judgment has been granted to a defendant is as follows: Can one or more undisputed facts be found in the record below establishing that the defendant acted in good faith on the appearance of things as they existed when suit was filed, based upon direct evidence, or upon circumstantial evidence and inferences that can reasonably be drawn therefrom?’ ”
Moon, 2 So.3d at 846 (quoting Eidson, 527 So.2d at 1285-86). Additionally, we have stated:
*1215 “It is well established that for purposes of a malicious-prosecution claim, the element of malice may be inferred from the lack of probable cause, see, e.g., Delchamps, Inc. v. Bryant, 738 So.2d 824, 833 (Ala.1999); McLeod v. McLeod, 75 Ala. 483, 486 (1883), but this Court has recognized that malice in law, or legal malice, for purposes of a malicious-prosecution claim, is not sufficient to defeat a state agent’s defense of discretionary-function immunity. This Court has required the plaintiff to prove that the defendant’s conduct was ‘so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith,’ by, for example, showing that the defendant had ‘a personal ill will against the [plaintiff] and that he maliciously or in bad faith arrested him solely for purposes of harassment.’ Couch v. City of Sheffield, 708 So.2d 144, 153-54 (Ala.1998) (affirming the trial court’s summary judgment in favor of the defendant, a municipal police officer, who, pursuant to Ala.Code 1975, § 6-5-338, was entitled to discretionary-function immunity in the same manner as a state agent).... ”
Ex parte Tuscaloosa Cty., 796 So.2d at 1107.
Here, it is undisputed that Bryson did not have a license to sell alcohol at “The Spot” and that Harris was aware of this fact. It is further undisputed that Harris had acquired information indicating that a “beer bash” was to be held at “The Spot” on the night in question and that, for the payment of a $7.00 admission fee, patrons could enter the premises and be provided alcohol for consumption. Finally, it is undisputed that upon Harris’s entry into “The Spot” he saw its patrons consuming alcohol. Based on the foregoing, we conclude that Harris had probable cause to initiate a judicial proceeding against Bryson and that he did so without malice.[2] Because Harris had probable cause to initiate a judicial proceeding against Bryson and because he did so without malice, he is immune from suit on Bryson’s malicious-prosecution claim under the doctrine of State-agent immunity set forth in Ex parte Cranman. See Ex parte Tuscaloosa Cty., supra; Borders, supra; Grider v. City of Auburn, 618 F.3d 1240 (11th Cir.2010). As mentioned above, Bryson presented some evidence indicating that Harris harbored some personal animosity toward her and that he had a competing financial interest, but that evidence does not alter the fact that he had probable cause to initiate a judicial proceeding against her, given his knowledge of the facts and circumstances giving rise to that proceeding. Carruth, supra.

The Other Claims

In addition to the false-arrest, false-imprisonment, and malicious-prosecution claims, Bryson asserted claims alleging intentional infliction of emotional distress, harassment, libel, and slander. Harris did not raise immunity as a defense to those claims. Rather, he argued in his summary-judgment motion that the inten *1216 tional-infliction-of-emotional-distress, libel, and slander claims were not supported by the evidence. He also argued that Alabama does not recognize a civil cause of action for harassment. Because the motion for a summary judgment as to those claims was not grounded on a claim of immunity, to the extent that Harris seeks mandamus review of those claims, we conclude that they are not reviewable by a petition for a writ of mandamus. Ex parte Purvis, 689 So.2d 794 (Ala.1996). Accordingly, to the extent that Harris seeks mandamus review of those claims, his petition is due to be denied.

II. The Town’s Petition (No. 1111285)

The Town argues that, under § 11-47-190, Ala.Code 1975, it cannot be held vicariously liable for the intentional acts of its employees. This Court has stated:
“Section 11-47-190, Ala.1975, provides that a municipality is immune from tort liability ‘unless such injury or wrong was done or'suffered through the neglect, carelessness or unskillfulness of some agent, officer or employed of the municipality engaged in work therefor and while acting in the line of his or her duty.’ This statute limits a municipality’s liability for the acts of its agents to those acts that are negligent, careless, or unskillful. Section 11-47-190 pro-¡ vides a municipality immunity from liability for the acts of its agents that are carried out in bad faith or with malice. Borders [v. City of Huntsville], 875 So.2d [1168] at 1188 [ (Ala.2003) ] (quoting Ex parte City of Gadsden, 718 So.2d 716, 721 (Ala.1998)).”
Ex parte City of Tuskegee, 932 So.2d 895, 910 (Ala.2005). See also Cremeens v. City of Montgomery, 779 So.2d 1190, 1201 (Ala. 2000)(“A municipality cannot be held liable for the intentional torts of its employees. See Ala.Code 1975, § 11-47-190.”); Town of Loxley v. Coleman, 720 So.2d 907, 909 (Ala.1998) (“This Court has construed § 11-47-190 to exclude liability for wanton misconduct.”).
Here, Bryson asserted in her complaint claims of malicious prosecution, false arrest, false imprisonment, harassment, intentional infliction of emotional distress, libel, and slander. Bryson specifically alleged that Harris was acting within the line and scope of his employment as the Town’s police chief and that the claims arose from Harris’s willful and intentional acts, which, she says, were designed to embarrass and harm her. Because Bry-son has alleged intentional tortious conduct on Harris’s part, the Town is immune from suit under § 11-47-190 as to each claim asserted against it.
We would further note that, to the extent that we have concluded above that Harris was entitled to State-agent immunity, the Town would also be immune from suit. Hollis v. City of Brighton, 950 So.2d 300 (Ala.2006); Ex parte Dixon, 55 So.3d 1171 (Ala.2010); City of Crossville v. Haynes, 925 So.2d 944, 955 (Ala.2005); Thurmond v. City of Huntsville, 904 So.2d 314, 326 (Ala.Civ.App.2004), and § 6-5-338(b), AkuCode 1975.

Conclusion

The trial court is directed to vacate its order denying Harris’s summary-judgment motion as to the false-arrest, false-imprisonment, and malicious-prosecution claims and to enter a summary judgment for Harris as to those claims. To the extent Harris seeks mandamus review of the claims alleging an intentional infliction of emotional distress, harassment, libel, and slander, the petition is denied. The trial court is further directed to vacate its order denying the Town’s summary-judgment motion and to enter a summary judgment for the Town as to each claim asserted against it.
*1217 1141345—MOTION TO STRIKE DENIED; PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
1141385—MOTION TO STRIKE DENIED; PETITION GRANTED; WRIT ISSUED.
STUART, MURDOCK, MAIN, and BRYAN, JJ., concur.

. Section 28-3A-25(a)(14), Ala.Code 1975, makes it unlawful "[f]or any person ... who ... has not been properly licensed under the appropriate provisions of this chapter to sell, offer for sale, or have in possession for sale, any alcoholic beverages.”

. Malicious-prosecution actions are not disallowed against arresting police officers simply because they are not the individuals who ultimately decide to institute a criminal proceeding. See Exford ■v. City of Montgomery, 887 F.Supp.2d 1210 (M.D.Ala.2012). Probable cause for a malicious-prosecution claim is not determined at the time of the arrest but when the defendant (usually the arresting officer) initiates the prosecution by filing a report with the prosecutor, submitting an affidavit, or giving grand-jury testimony. Beyond Police Misconduct and False Arrest: Expanding the Scope of 42 U.S.C. § 1983 Litigation, 8 Suffolk J. Trial & App. Advoc. 39. Here, it was Harris who completed the Alabama Uniform Incident/Offense Report and provided the supporting deposition.