Rel: June 27, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

———————————————

### SC-2024-0419

———————————————

## Ex parte Devon McGuire and Spencer Collier

## PETITION FOR WRIT OF MANDAMUS

## (In re: Faya Rose Toure

## v.

## Spencer Collier et al.)

## (Dallas Circuit Court: CV-19-900204)

STEWART, Chief Justice.

Devon McGuire and Spencer Collier have petitioned this Court for a writ of mandamus directing the Dallas Circuit Court ("the trial court") to enter a summary judgment on the basis that the claims asserted against them by Faya Rose Toure are barred by immunity. For the following reasons, we grant the petition and issue a writ directing the trial court to enter a summary judgment in favor of McGuire and Collier.

Background

On July 2, 2019, Toure sued the City of Selma ("the City"); Collier, the Chief of Police for the City; and McGuire, a police officer for the City, in relation to her arrest for charges of fourth-degree theft of property and attempting to elude. Toure asserted against McGuire and Collier numerous claims, including assault and battery; false arrest; unlawful imprisonment; invasion of privacy; "negligence, carelessness, and unskillfulness"; wantonness; abuse of legal process; "unreasonable seizure"; and "defamation/libel." Toure asserted against the City claims of negligent, careless, and "unskillful" hiring, training, and/or supervision and "custom of police abuse." Toure sought compensatory damages in the amount of $1,000,000 and punitive damages in the amount of $3,000,000.

McGuire, Collier, and the City ("the defendants") filed an answer and asserted numerous affirmative defenses, including peace-officer and State-agent immunity. The defendants later filed a motion for a summary judgment based on peace-officer immunity under § 6-5-338, Ala. Code 1975, and State-agent immunity, among other grounds. The defendants submitted in support of their motion deposition testimony from McGuire, Collier, and Toure, along with an incident report, an arrest report, and video from McGuire's body camera of the incident underlying Toure's claims.

The evidence submitted by the defendants showed the following: On July 16, 2018, McGuire was employed as a police officer for the City and was traveling in an unmarked patrol vehicle owned by the City. McGuire observed Toure remove a campaign sign from property adjacent to Tabernacle Baptist Church. McGuire witnessed Toure place the sign in her vehicle and drive off. McGuire lost sight of Toure's vehicle, but when he spotted her again later in her vehicle, he activated his patrol vehicle's lights, pulled his patrol vehicle alongside Toure's vehicle, and asked her to return the campaign sign she had removed. Toure told McGuire to "go to hell" and drove off, running a red light in the process.

According to McGuire, he then initiated a traffic stop. Toure exited her vehicle and approached McGuire's patrol vehicle. McGuire exited his patrol vehicle to retrieve his body camera from the backseat. At that point, Toure reentered her vehicle and again drove off. McGuire activated his patrol vehicle's siren and his body camera, requested additional officers' assistance, and pursued Toure, who pulled her vehicle over after driving approximately three and a half blocks.

The ensuing interaction was captured on the body-camera video that was submitted with the defendants' summary-judgment motion and is contained as an exhibit to McGuire and Collier's mandamus petition. The video shows McGuire approach Toure, who was sitting in her vehicle. A girl, identified as Toure's granddaughter, was sitting in the passenger seat. McGuire asked Toure to provide him with her identification no less than eight times before she provided it. Meanwhile, several more police officers arrived on scene. Throughout the interaction, Toure can be seen purportedly recording the surrounding scene with her cellular telephone, and she made numerous statements indicating her dissatisfaction with officers of the Selma Police Department choosing to detain her. McGuire

stepped away to radio Toure's driver's license number in to dispatch, and then he told a group of people on the sidewalk to back up.

After McGuire had walked away, Toure exited her vehicle and walked around while recording and commenting to the officers and to the crowd with statements like: "You would think I committed a murder" and "Do y'all see all these cops?" Toure can also be heard telling her granddaughter to go around the corner to an office to ask someone to call Toure's husband. Approximately five minutes elapsed between Toure's pulling her vehicle over and McGuire's advising her that she was under arrest. While McGuire attempted to place handcuffs on Toure, she continued to turn and resist the handcuffs, and she asked McGuire to handcuff her with her wrists in the front of her body because her wrist had previously been broken. McGuire refused, eventually got the handcuffs secured behind Toure's back, and placed Toure in the back of a police vehicle.

In Toure's deposition, she acknowledged that she had removed a political sign that did not belong to her from public property. Toure also acknowledged in her testimony that she had driven three blocks after realizing McGuire was a police officer.

Collier's deposition testimony indicated that Selma Police Department policy requires officers to handcuff a person upon arrest before transporting them and that there is no policy prohibiting handcuffs behind the back, regardless of the circumstances. Collier also testified that Selma Police Department policy requires officers to use body cameras during traffic stops or calls for services and that McGuire had complied with that policy by activating his body camera during his pursuit of Toure. Collier specifically testified that he did "not disagree with Detective McGuire's actions" and "did not see anything that [McGuire] did that violated policy or a good practice of a law enforcement officer." When Toure asked Collier if he really believed that a person stopping in three and a half blocks was attempting to elude, Collier replied that he had actually written that law in Alabama and that this scenario was a "textbook case."

Collier testified that the Selma Police Department had held a press conference relating to Toure's arrest in response to multiple inquiries from different media outlets and to respond to a press conference that Toure's husband had held regarding the incident. Collier testified that both he and the detective division of the police department had authority

6

to release mug shots to the media, and he could not recall who had released Toure's mug shot.

In opposition to the defendants' summary-judgment motion, Toure presented affidavit testimony from Samuel Coleman, a deacon at Tabernacle Baptist Church, stating that he had observed Toure remove the campaign sign from the street side of the sidewalk that was not on church property. Toure also submitted a copy of Local Ordinance, § 6-83, which prohibits the posting of political signs and posters to utility poles or other structures on public property or rights-of-way.

Toure also submitted her own affidavit in which she explained that she had removed the sign, which she believed had been illegally placed on public property. She stated that, when McGuire initially spoke to her, he was not in uniform and was in an unmarked police vehicle, she did not know who he was, and had felt "intimidated" by him. She explained that when he had later attempted to pull her over, she had not attempted to elude, but had believed that she was facing possible harassment, and, thus, had traveled several blocks to a location where witnesses were present. Toure also submitted an affidavit of her husband, who had appeared at the scene of her arrest. Toure also submitted a copy of an

article from the Selma Times Journal regarding her arrest and a copy of the front page of the Selma Times Journal with a headline regarding Toure's theft charges and a picture of her mug shot.

The trial court entered a summary judgment in favor of the City but denied the motion for a summary judgment as to McGuire and Collier. Collier and McGuire then petitioned this Court for a writ of mandamus.

### Standard of Review

A petition for a writ of mandamus is an appropriate method by which an appellate court may review the denial of a summary-judgment motion that was premised on the defense of immunity. Ex parte Nall, 879 So. 2d 541, 543 (Ala. 2003) (citing Ex parte Rizk, 791 So. 2d 911, 912 (Ala. 2000)). To obtain the extraordinary remedy of a writ of mandamus, the petitioner must demonstrate: "'(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.'" Id. (quoting Ex parte BOC Group, Inc., 823 So. 2d 1270, 1272 (Ala. 2001)).

In reviewing the denial of a summary-judgment motion based on peace-officer and State-agent immunity, this Court first considers the evidence surrounding the activities of the defendant in a light most favorable to the plaintiff. If the defendant presented evidence demonstrating that he or she was engaged in conduct that would entitle the defendant to immunity, we then consider whether the plaintiff met his or her burden of demonstrating by substantial evidence the applicability one of the exceptions to State-agent immunity set forth in Ex parte Cranman, 792 So. 2d 392, 405 (Ala. 2000)(plurality opinion)(setting forth a restatement of State-agent immunity that was adopted by a majority of the Court in Ex parte Butts, 775 So. 2d 173, 178 (Ala. 2000)). See Ex parte Utilities Bd. of Foley, 265 So. 3d 1273, 1281 (Ala. 2018); Ex parte Estate of Reynolds, 946 So. 2d 450, 452 (Ala. 2006); and Ex parte Wood, 852 So. 2d 705, 708 (Ala. 2002).

## Discussion

Collier and McGuire argue, as they did in support of their summary-judgment motion, that Toure's claims against them are barred by the immunity afforded to municipal peace officers by § 6-5-338(a), Ala. Code 1975, and by the doctrine of State-agent immunity, as restated in

9

Ex parte Cranman. Section 6-5-338(a) provides peace officers with "immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." See also Ex parte Tucker, 303 So. 3d 467, 472 (Ala. 2019)(explaining that immunity extends "'to employees of municipalities in the same manner that immunity applies to employees of the State'" (citation omitted)). "The restatement of State-agent immunity as set out by this Court in Ex parte Cranman, supra, governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a)." Ex parte City of Montgomery, 99 So. 3d 282, 292 (Ala. 2012)(citing Ex parte City of Tuskegee, 932 So. 2d 895, 904 (Ala. 2005)).

As relevant here, "'[a] State agent shall be immune from civil liability in his or her personal capacity'" if his or her conduct involved, among other things, "'(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to … (d) hiring, firing, transferring, assigning, or supervising personnel'" or "'"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement

officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975."'" <u>Ex parte City of Montgomery</u>, 99 So. 3d at 292 (quoting <u>Ex parte Cranman</u>, 792 So. 2d at 405, and <u>Hollis v. City of Brighton</u>, 950 So. 2d 300, 309 (Ala. 2006))(emphasis omitted).[1]

As mentioned above, after the defendant successfully demonstrates engagement in conduct that would entitle the defendant to immunity, the burden then shifts to the plaintiff to demonstrate by substantial evidence the applicability of one of the two following exceptions to State-agent immunity:

> "'(1) … the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

> "'(2) … the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'"

---

[1]In <u>Hollis</u>, this Court expanded category 4 of the <u>Cranman</u> restatement to encompass the peace-officer immunity set forth in § 6-5-338(a).

Suttles v. Roy, 75 So. 3d 90, 94 (Ala. 2010) (quoting Ex parte Cranman, 792 So. 2d at 405).

McGuire and Collier (insofar as his liability is premised upon McGuire's actions), undisputedly both qualify as peace officers performing law-enforcement duties at the time of the conduct underlying Toure's claims against them. McGuire and Collier presented undisputed evidence indicating that McGuire witnessed Toure remove a campaign sign that did not belong to her, from property that, likewise, did not belong to her, and that, when McGuire attempted to conduct a traffic stop, Toure drove approximately three and a half blocks despite knowing that McGuire was a police officer. McGuire arrested Toure for fourth-degree theft of property and attempting to elude a police officer.[2] Without question, by investigating Toure and attempting to arrest her for potential crimes he had witnessed, McGuire was performing a

_____

[2]See § 13A-8-5(a), Ala. Code 1975 (defining fourth-degree theft of property as: "The theft of property which does not exceed five hundred dollars ($500) in value and which is not taken from the person of another …."); and § 13A-10-52(b), Ala. Code 1975 ("It shall be unlawful for a person while operating a motor vehicle on a street, road, alley, or highway in this state, to intentionally flee or attempt to elude a law enforcement officer after having received a signal from the officer to bring the vehicle to a stop.").

"discretionary function within the line and scope of his ... law enforcement duties," § 6-5-338(a), and was "'"exercising judgment in the enforcement of the criminal laws of the State."'" Ex parte City of Montgomery, 99 So. 3d at 292 (citations omitted). See Downing v. City of Dothan, 59 So. 3d 16, 20 (Ala. 2010)(holding that police officers met initial burden of showing application of immunity to their actions because, in deciding whether to arrest someone, they "were engaged in a law-enforcement function for which State-agent immunity would be available"); Ex parte City of Tuskegee, 932 So. 2d at 906 (holding that officers were "entitled to immunity because they were engaged in an 'arrest or attempted arrest,' which is a discretionary function requiring the exercise of judgment"); Swan v. City of Hueytown, 920 So. 2d 1075, 1079 (Ala. 2005) (explaining that "arrests and attempted arrests," which require officers to exercise judgment, "clothe[] the officer in State-agent immunity"); Telfare v. City of Huntsville, 841 So. 2d 1222, 1228 (Ala. 2002)("Generally, arrests and attempted arrests are classified as discretionary functions."); and Ex parte Duvall, 782 So. 2d 244, 248 (Ala. 2000)(plurality opinion)(holding that arresting a driver "for refusing to

13

comply with a lawful order or direction of a police officer" is "clearly a discretionary function").

Furthermore, to the extent that Toure's claims against Collier are based on his own conduct as chief of police, Collier is shielded by category (2) of the Cranman restatement -- exercising judgment in the administration of the police department in allocating resources and in hiring, firing, and supervising police officers.

Because McGuire and Collier presented evidence in support of their summary-judgment motion demonstrating that McGuire and Collier were engaged in conduct that would entitle them to peace-officer and State-agent immunity, the burden shifted to Toure to demonstrate, by substantial evidence, that one of the two exceptions to that immunity applied to McGuire's and Collier's conduct underlying any of the claims that she asserted against them.

Toure argues the applicability of both exceptions. Toure first asserts that McGuire's and Collier's actions violated her constitutional right to free speech because, she says, she "had a First Amendment right to remove the sign." Toure's brief at 12. Toure, however, did not identify

any authority indicating that their conduct violated the United States Constitution.

Toure also argues that McGuire and Collier "'act[ed] willfully, maliciously, fraudulently, in bad faith, beyond [their] ... authority, or under a mistaken interpretation of the law.'" Suttles, 75 So. 3d at 94 (citation omitted). Toure contends that they "failed to discharge their duties pursuant to detail[ed] rules and regulations. The officers failed to follow clear departmental protocol in investigating an[d] arresting [Toure]." Toure's brief at 29-30. Toure does not identify what "clear departmental protocol" McGuire or Collier failed to follow, but she asserts that there was no investigation and that McGuire failed to timely activate his body camera.

This Court has explained that if an arrest is made with at least arguable probable cause, "we cannot say that [the officer] acted 'willfully, maliciously, fraudulently, [or] in bad faith' so as to remove him from the umbrella of State-agent immunity afforded him under Ex parte Cranman." Ex parte Harris, 216 So. 3d 1201, 1214 (Ala. 2016). "'[P]robable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonable trustworthy

information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" Harris, 216 So. 3d at 1213 (quoting Walker v. City of Huntsville, 62 So. 3d 474, 492 (Ala. 2010))(discussing false-arrest and false-imprisonment claims). "Arguable probable cause exists 'when an officer makes an arrest lacking probable cause if officers of reasonable competence in the same circumstances and with the same knowledge would disagree as to whether probable cause existed.'" Id. (quoting Borders v. City of Huntsville, 875 So. 2d 1168, 1179 (Ala. 2003)).

As explained above, the evidence McGuire and Collier presented established that McGuire had witnessed Toure take a sign that did not belong to her, which, they testified, constituted fourth-degree theft of property. After Toure ignored McGuire's request that Toure return the sign, McGuire attempted to initiate a traffic stop, which devolved into an arrest after Toure continued driving her vehicle for over three blocks before pulling her vehicle cover  -- circumstances that Collier testified constituted a "textbook case" of attempting to elude. Collier further testified that he did "not disagree with Detective McGuire's actions" and

16

"did not see anything that [McGuire] did that violated policy or a good practice of a law enforcement officer."

Toure argues that Local Ordinance, § 6-83, implicitly decriminalized her conduct because, she says, she removed what she claims was an illegally placed campaign sign from public property and had no intent to keep the sign.[3] However, whether Toure believed that she was permitted to remove the sign, whether anyone else has been arrested for such an offense, and whether Toure is ultimately found guilty of the crimes for which she was arrested are irrelevant to the inquiry here: whether McGuire had arguable probable cause to arrest her. See Harris, 216 So. 3d at 1213 (citing Dixon v. State, 588 So. 2d 903 (Ala. 1991))("[A] showing of probable cause does not require evidence or information sufficient to support a conviction."). Because McGuire and

_____

[3]The ordinance, by its title, applies to "[s]igns and posters attached to utility poles and structures on public property or right-of-way," and the ordinance makes it "unlawful for any person to affix, post, paint, tack, attach or support" certain signs "to any telephone or utility pole, tree, pipe, or other structure, support, or object on, within, upon or over any public street, sidewalk, right-of-way or public property in the City of Selma." It is not clear that the ordinance even applies to signs simply placed in grass and not affixed to objects. Furthermore, it specifically authorizes only the police chief, his staff, the code-enforcement department, and the city council to remove an unlawful sign.

17

Collier presented evidence demonstrating that McGuire had probable cause, or at least arguable probable cause, to arrest Toure, and because Toure failed to present substantial evidence establishing otherwise, "we cannot say that he acted 'willfully, maliciously, fraudulently, [or] in bad faith' so as to remove him from the umbrella of State-agent immunity afforded him under Ex parte Cranman." Harris, 216 So. 3d at 1214. Accordingly, McGuire and Collier are entitled to immunity on Toure's claims of negligence, wantonness, assault and battery, false arrest, unlawful imprisonment, invasion of privacy, abuse of process, and "unreasonable seizure" -- all of which are based on alleged conduct that occurred during the course of Toure's arrest.[4]

---

[4]Toure also presents allegations and arguments in her response brief relating to malicious prosecution, but she did not assert that claim in her complaint. Instead, Toure asserted abuse-of-process claims, and such a claim is distinct from a malicious-prosecution claim. See Willis v. Parker, 814 So. 2d 857, 865 (Ala. 2001) (quoting C.C. & J., Inc. v. Hagood, 711 So. 2d 947, 950 (Ala. 1998))(emphasis omitted)("'Malicious prosecution concerns the wrongful issuance of process; abuse of process concerns the wrongful use of process after it has been issued.'"). Toure does not address her abuse-of-process claims against McGuire and Collier, and, in any event, Toure did not present substantial evidence establishing that McGuire's or Collier's conduct fell within an exception to immunity. Thus, McGuire and Collier are also immune from Toure's abuse-of-process claims.

Toure also asserted defamation and libel claims against McGuire and Collier. It appears that Toure bases those claims on Collier's decision to call "a press conference to defame and portray [Toure] as a 'criminal' to the public" and on his alleged decision to provide a mug shot to the local press. Toure's brief at 16. Toure alleges, for instance, that Collier incorrectly informed the press that she had reached speeds of 50 miles per hour while attempting to elude McGuire -- a claim she denies. Toure asserts that McGuire's and Collier's "actions were clearly personally and politically motivated." Toure's brief at 26. Collier, however, testified that his decision to call a press conference was because of the public interest in the case, which included numerous requests for information from various media outlets. The decision to call a press conference and release information about the case concerned Collier's judgment as police chief regarding the administration of his department. Toure, however, did not provide substantial evidence demonstrating that Collier's decision to call a press conference or that any of the statements made by Collier or McGuire concerning the incident were made willfully, maliciously, fraudulently, in bad faith, beyond their authority. Accordingly, Toure did not present substantial evidence demonstrating that McGuire's and

19

Collier's conduct fell within an exception to immunity, and the trial court should have entered a summary judgment on Toure's claims of defamation and libel as well.

Conclusion

McGuire and Collier presented evidence in support of their summary-judgment motion demonstrating that they were engaged in conduct that would entitle them to peace-officer and State-agent immunity in relation to Toure's claims against them. Because Toure failed to present substantial evidence establishing that McGuire's or Collier's conduct fell within one of the exceptions to that immunity, the trial court should have entered a summary judgment in McGuire's and Collier's favor. Accordingly, we grant McGuire and Collier's petition and issue a writ directing the trial court to enter a summary judgment on the basis of immunity in favor of McGuire and Collier. See § 6-5-338.

PETITION GRANTED; WRIT ISSUED.

Shaw, Wise, Bryan, Sellers, Mendheim, Cook, McCool, and Lewis, JJ., concur.